**Richard A. MOSBY, M.D., Plaintiff,**

**v.**

**AMERICAN MEDICAL INTERNATIONAL, INC., Citizens, General Hospital, Alexander P. Remenchik, M.D., A. Vutpakdi, M.D., T. Khamapirad, M.D., Vladimier Mendoza, M.D., Howard Berg, M.D., A. McLeod, D.O., J.G. Gengelbach, D.O., Pulin Pandya, M.D., Patrick A. Titus, M.D., Ebrahim Ziafat, M.D., Carlos Antonetti, M.D., David Suffian, D.O., Raul Sepulveda, M.D., H.S. Chana, M.D., Kenneth Korsah, M.D., Defendants.**

**Civ. A. No. H–82–1569.**

United States District Court,
S.D. Texas,
Houston Division.

March 24, 1987.

Mende Snodgress, Nelkin & Nelkin, Houston, Tex., for plaintiff.

William R. Pakalka, Stephen C. Ascher, Fulbright & Jaworski, Houston, Tex., for defendants.

## MEMORANDUM OPINION
## AND ORDER

HITTNER, District Judge.

Pending before the Court is Defendants' Motion for Summary Judgment. Having considered the pleadings, motions and materials attached thereto, oral arguments and representations, and the law applicable thereto, the Court is of the opinion that Defendants' Motion for Summary Judgment on Plaintiff's antitrust cause of action should be and hereby is GRANTED.

### FACTS

In November, 1981, Defendant Citizens General Hospital ("CGH") entered into a "Radiology Agreement" ("Agreement") with Defendant Radiologist Vutpakdi, in which Vutpakdi agreed to provide prompt and continuous radiology service to attending physicians at CGH. Until January, 1982, Vutpakdi used an on-call schedule of available radiologists to meet his obligation to assure full-time coverage. The Plaintiff, Dr. Mosby, was included on the on-call roster of staff radiologists to whom weekend and evening radiology service requests were referred. In January, 1982, Dr. Vutpakdi decided to hire a full-time assistant and ceased using the on-call roster. Dr. Mosby applied for, but was not offered, the position of radiology assistant under Dr. Vutpakdi. Dr. Mosby, who retained his full staff privileges at CGH and five other Houston area hospitals, continued to receive referrals and to practice with full staff privileges at CGH.

CGH has alleged, and Dr. Mosby has not denied, that it maintained an "open staff" policy at all times. According to CGH's definition, "open staff" means that attending physicians may request the services of any staff radiologist, including Dr. Mosby, and are not required to use Dr. Vutpakdi or his assistant to interpret x-rays taken at the hospital. Under this open staff policy, Dr. Vutpakdi does not have an exclusive

contract with CGH. He takes only those referrals which designate "no preference" or Dr. Vutpakdi specifically.

### SUMMARY JUDGMENT MOTION

Dr. Mosby's second amended complaint alleges that Defendants violated section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (1982), which prohibits contracts and conspiracies in restraint of trade. Dr. Mosby asserts that his removal from the on-call roster deprived him of referrals from the hospital emergency room, resulted in an unreasonable restraint of trade, and had a significant effect on competition. Defendants seek summary judgment on Plaintiff's claim, and argue that no material issues of fact exist which tend to show that Defendants conspired to restrain trade, to harm the Plaintiff, or to harm competition in the relevant market.

In response to the Defendants' Motion for Summary Judgment, Dr. Mosby insists that he has raised issues of material fact which support his allegations of antitrust violation. He asserts that the Defendants conspired to discourage competing radiologists, fix prices of radiological services, and deprive consumers of a choice of radiological services.

■ A Court may grant summary judgment only if "there is no genuine issue as to any material facts and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court need not examine the substantive issues except to determine whether a disputed fact or inference is material to an essential legal element of the case. *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* —— U.S. ——, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986). The party seeking summary judgment bears the burden of demonstrating that there is no actual dispute as to any material fact in the case.[1]

---

**1.** *Matsushita,* 106 S.Ct. at 1356; Fed.R.Civ.P. 56(c). This is the traditional summary judgment burden. Under the recent interpretation of the Rule 56(e) burden in *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986), the United States Supreme Court held that this burden does not require the movant to produce evidence showing the absence of a fact issue. *Id.,* 106 S.Ct. at 2554. After sufficient time for discovery, "the burden on the

Once this burden has been met, the nonmovant must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). *See Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 565 (5th Cir.1980). If the nonmovant does not set forth specific facts in support of allegations "essential to that party's case and on which that party will bear the burden of proof," then the Court's granting of the summary judgment motion is not only appropriate but also mandatory. *Celotex*, 106 S.Ct. at 2552–53; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir.1986).

In the past, the United States Supreme Court has found that "summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles." *Poller v. Columbia Broadcasting Sys.*, 368 U.S. 464, 483, 82 S.Ct. 486, 496, 7 L.Ed.2d 458 (1962). *See also Hospital Building Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746–47, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). However, recent cases have made it clear that summary judgment for the defendant is appropriate, even in complex antitrust cases, where the plaintiff fails to establish genuine issues of material fact bearing on the legal elements of the case. *Matsushita*, 106 S.Ct. at 1355–62; *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).[2] *See Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1322–23 (5th Cir.1983) and authorities cited; *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 553–554 (5th Cir.1980). For the reasons set forth below, this Court finds that movant has met its burden of proof by demonstrating that there is no dispute as to any material fact in the case. Furthermore, this Court finds that Dr. Mosby has failed to offer evidence which establishes genuine issues of fact concerning the two legal elements of his antitrust cause of action—conspiracy and restraint of trade. This Court is therefore of the opinion that Defendants' Motion for Summary Judgment should be granted.

## CLAIMS UNDER SECTION 1 OF THE SHERMAN ACT

Plaintiff asserts a cause of action under section 1 of the Sherman Act, 15 U.S.C. § 1 (1984). Plaintiff specifically contends that Defendants' actions constitute a combination and conspiracy in restraint of trade and that Defendants conspired to discourage competing radiologists, fix prices of radiological services, and deprive consumers of a choice of radiological services.

### A. *Conspiracy*

 Under section 1 of the Sherman Act all combinations or conspiracies in restraint of trade are illegal. 15 U.S.C. § 1 (1982). The existence of a contract alone, although it may place restrictions on trade in a literal sense, is not necessarily an antitrust violation. The elements of a section 1 antitrust action include both conspiracy (combination) *and unreasonable* restraint of trade.[3] In the case before the

---

moving party may be discharged by 'showing'—that is pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Id.* This Court finds that the moving party in this case has gone beyond the principle enunciated in *Celotex*, specifically by *submitting* sufficient summary judgment evidence to meet the traditional burden.

2. "While we recognize that importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint." *Cities Service Co.*, 391 U.S. at 290, 88 S.Ct. at 1593.

3. Soon after Congress enacted the Sherman Act of 1890, courts encountered a conflict between the statute's literal prohibition of "any combination ... in restraint of trade" on the one hand and the "long recognized right of [a] trader ... engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal" on the other. *United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919). *See Standard Oil Co. v. U.S.*, 221 U.S. 1, 82–106, 31 S.Ct. 502, 524–34, 55 L.Ed. 619 (1911) (Harlan, J., concurring in part and dissenting in part) (discussing the outcome of significant cases which dealt with this conflict); *United States v. Trans-Missouri Freight Ass'n*, 166 U.S. 290, 340–41, 17 S.Ct. 540, 558–59, 41 L.Ed. 1007 (1897) (interpreting the Sherman Act literally). The conflict arose because *any* contract, legal or

Court, the contract made between Vutpakdi and the hospital constitutes a "combination," but it includes no provisions concerning other staff radiologists, prices, or restriction of radiological services. Thus some other proof of conspiracy to restrain trade must be offered by the Plaintiff.[4]

The Plaintiff does allege that further agreements existed outside the formal contract. Specifically, Dr. Mosby alleges that Dr. Vutpakdi and the CGH Executive Committee conspired to: (1) refuse to appoint Dr. Mosby as Dr. Vutpakdi's assistant, (2) remove Plaintiff from the night and weekend schedule, (3) discourage private physicians from referring work to Plaintiff both before and after the Agreement was entered, and (4) encourage referrals to Dr. Vutpakdi and his assistant. This Court finds that these allegations are not supported by specific facts and do not create issues material to the outcome of the Plaintiff's case.

■ The proper legal standard for evaluating a summary judgment motion on an antitrust conspiracy claim was recently addressed by the United States Supreme Court in *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). First, where conduct is "as consistent with permissible competition as with illegal conspiracy [it] does not, standing alone, support an inference of antitrust conspiracy." *Matsushita*, 106 S.Ct. at 1357 (citing *Mon-santo Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984)). Although Dr. Vutpakdi removed Dr. Mosby from the on-call roster, this action is consistent with a permissible course of competitive conduct by the Defendants. Competitive businesses maintain their share of the market by competing effectively. One method of competing effectively is to improve service to the customer. It is highly plausible that CGH sought to improve its radiology-service when it contracted with Dr. Vutpakdi. The contract required Dr. Vutpakdi to provide prompt and continuous radiology service to CGH staff physicians.[5] It is reasonable to assume that Dr. Vutpakdi could not provide continuous service single-handedly and that with an assistant he could directly control the quality and consistency of service to the staff physicians and their patients. Because this conduct is as consistent with a legitimate and logical competitive objective as it is with Dr. Mosby's assertion of illegal conspiracy, it "does not, standing alone, support an inference of antitrust conspiracy." *Matsushita*, 106 S.Ct. at 1357. Thus, Defendants' conduct of eliminating the on-call roster is not a material fact which bears on the outcome of the case.

■ Second, the Court may consider the logic of the Plaintiff's assertions and the likelihood of success of the alleged

---

[4] illegal, restrains trade to some extent. *Standard Oil Co. v. United States*, 221 U.S. at 86–89, 31 S.Ct. at 526–27 (Harlan, J., concurring in part and dissenting in part). In recognizing that some contracts which restrain trade are beneficial to both commerce and the public interest, the Supreme Court determined that Congress did not intend to prohibit *all* contracts, but only those which impose an *unreasonable* or *undue* restraint of trade, and so construed the Sherman Act. *Id.; United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 280–82 (6th Cir.1898), *aff'd as modified*, 175 U.S. 211, 20 S.Ct. 96, 40 L.Ed. 136 (1899) (modified to limit the decision to interstate agreements).

**4.** In *Monsanto* the United States Supreme Court found that "the fact that a manufacturer and its distributors are in constant communication about prices and marketing strategy does not alone show that the distributors are not making independent pricing decisions." *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 762, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984). The Court found legitimate reasons for the information exchange and required more proof of a conspiracy to restrain trade than "an inference of such an agreement ... drawn from highly ambiguous evidence." 465 U.S. at 763, 104 S.Ct. at 1470. Similarly, the existence of a Radiology Agreement signed by Defendants is not proof of a conspiracy to restrain trade.

**5.** The Radiology Agreement, appended to Defendants' Memorandum in support of its motion, bound Dr. Vutpakdi to "establish procedures to assure the consistency and quality of all services provided" in the Radiology Department.

conspiracy when determining whether a conspiracy existed.[6]

> [T]he absence of any plausible motive to engage in the conduct is highly relevant to whether a "genuine issue for trial" exists within the meaning of Rule 56(e).... [I]f petitioners had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy.

*Matsushita,* 106 S.Ct. at 1361 (citing *Cities Service,* 391 U.S. at 278–280, 88 S.Ct. at 1587–88). As discussed above, we find Defendants' conduct to be consistent with lawful behavior and objectives. Additionally, we find that the Defendants' alleged misconduct, the elimination of the on-call roster, is not rationally related to a plan to eliminate Dr. Mosby's practice at CGH. Because CGH has bylaws which require an open staff policy, the plan would not succeed without an amendment to the bylaws permitting CGH to enter into an exclusive contract for radiology services. In fact, Dr. Mosby has not provided evidence which tends to show that his practice was eliminated or even diminished by Defendants' actions.[7]

■ Even if a conspiracy by Defendants to eliminate referrals to Dr. Mosby would succeed in eliminating his practice, Dr. Mosby has provided the Court only with allegations, not facts, to show that Defendants actually conspired to eliminate referrals. In fact, Defendants assert, and Dr. Mosby does not deny, that staff physicians remained free at all times to make referrals to Dr. Mosby. Thus, Plaintiff's allegations that Defendants conspired to eliminate his radiology practice at CGH is both unsupported by specific facts and inconsistent with a rational economic motive. Dr. Mosby has failed to establish that issues of fact exist concerning the alleged conspiracy.

### B. Restraint of Trade

■ "Restraint of trade" under the Sherman Act is not *any* restraint of interstate commerce, but includes only unreasonable or undue restraints of trade. *Standard Oil Co. v. United States,* 221 U.S. 1, 60–62, 31 S.Ct. 502, 515–16, 55 L.Ed. 619 (1911). The challenged activity which appears on its surface to restrain trade must be examined for its purpose, scope, and effect to determine whether the agreement merely regulates and promotes competition or suppresses and thus destroys competition. *Board of Trade of Chicago v. United States,* 246 U.S. 231, 238–40, 38 S.Ct. 242, 243–44, 62 L.Ed. 683 (1918). The courts engage in two different modes of legal analysis, per se analysis and "rule of reason" analysis, in determining whether a challenged activity is an unreasonable restraint of trade.

■ 1. *Per Se Analysis.* An agreement, whose nature and effect is so plainly anticompetitive that no study of the industry is needed to establish its effect and purpose, is illegal per se under section 1 of the Sherman Act. *National Society of Professional Engineers v. United States,* 435 U.S. 679, 692, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978). In the commercial setting, for example, an agreement to fix prices is always considered to be an anticompetitive and unreasonable restraint of

---

**6.** In *Matsushita,* the plaintiff charged that defendant conspirators attempted to restrain trade through predatory pricing. The Court would not infer an antitrust conspiracy from ambiguous evidence, especially where the plaintiff's theory makes "no practical sense" from an economic standpoint and has little chance of success. *Matsushita,* 106 S.Ct. at 1360–61. "The evidence must 'tend[ ] to exclude the possibility' that petitioners under-priced respondents to compete for business rather than to implement an economically senseless conspiracy..... In the absense of such evidence, there is no 'genuine issue for trial' under rule 56(e), and petition-

ers are entitled to have summary judgment...." *Id.* at 1362.

**7.** The Defendants assert in their Memorandum in Support of Motion for Summary Judgment, and Dr. Mosby does not deny, that Dr. Mosby received 617 referrals at CGH from January 1, 1982, through September, 1982. Furthermore, even if the Defendants refused to allow Dr. Mosby to practice at all at CGH, such a closed staff situation was found not to violate antitrust laws in *Jefferson Parish. Jefferson Paerish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 30–31, 104 S.Ct. 1551, 1567–68, 80 L.Ed.2d 2 (1984).

trade which is therefore illegal *per se.* *Catalano, Inc. v. Target Sales, Inc.,* 446 U.S. 643, 648–50, 100 S.Ct. 1925, 1928–29, 64 L.Ed.2d 580 (1980); *United States v. Container Corp.,* 393 U.S. 333, 337, 89 S.Ct. 510, 512, 21 L.Ed.2d 526 (1969); *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 221, 60 S.Ct. 811, 843, 84 L.Ed. 1129 (1940).

 2. *"Rule of Reason" Analysis.* The "rule of reason" applies if the challenged act's effect on competition can only be evaluated by analyzing facts peculiar to the business, the history of the restraint (purpose), and the reasons for its imposition (intent). *See National Society of Professional Engineers v. United States,* 435 U.S. 679, 692, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978); *Appalachian Coals, Inc. v. United States,* 288 U.S. 344, 360–61, 53 S.Ct. 471, 474, 17 L.Ed. 825 (1933). In analyzing a claim of restraint of trade under the rule of reason analysis, the fact finder weighs all of the procompetitive benefits against the anticompetitive effects of the challenged activity to determine whether that activity is an unreasonable restraint. *Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977). In a nontraditional commercial setting, such as agreements concerning insurance companies, or doctors and other professionals, a comprehensive review of the challenged activity may be necessary. *National Society of Professional Engineers v. United States,* 435 U.S. 679, 696, 98 S.Ct. 1355, 1367, 55 L.Ed.2d 637 (1978). The subject matter may be so complex that it requires a full trial to examine the true purpose and effect of the challenged activity. *FTC v. Indiana Fed'n of Dentists,* — U.S. —, 106 S.Ct. 2009, 2018, 90 L.Ed.2d 445 (1986).

 Where the plaintiff alleges price-fixing, as Mosby does, that particular issue is not so complex or obfuscated by collateral considerations that extensive analysis is required. "[T]he fact that doctors—rather than nonprofessionals—are the parties to a price-fixing agreement" does not require rule of reason analysis. *Arizona v. Maricopa Co. Medical Society,* 457 U.S. 332, 348, 102 S.Ct. 2466, 2475, 73 L.Ed.2d 48 (1982). Thus, if Dr. Mosby's allegations are true, and the Defendants actually did conspire to fix prices of radiological services, then the Defendants' activities are illegal *per se* under *Catalano,* 446 U.S. at 648–50, 100 S.Ct. at 1928–29 and *Socony-Vacuum Oil,* 310 U.S. at 221, 60 S.Ct. at 843. However, the Plaintiff has failed to set forth specific facts which tend to show price-fixing. The Agreement does not include a price schedule, and each radiologist has continued to set his fees. Dr. Mosby does not claim that the prices charged have increased, decreased, or become uniform as a result of the Agreement. Thus, the Court is of the opinion that no material issues of fact are in dispute with respect to price-fixing.

 Dr. Mosby's other contentions—that Defendants conspired to deny him the position of staff radiologist, remove him from the on-call roster, and discourage his referrals—would be subject to the rule of reason analysis. In the absence of per se liability, the Plaintiff bears the burden of proving that these actions resulted in an unreasonable restraint of trade. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 29, 104 S.Ct. 1551, 1567, 80 L.Ed.2d 2 (1984). To be unreasonable, the restraint must not only injure the Plaintiff but also unreasonably restrain competition. *Jefferson Parish,* 466 U.S. at 29, 104 S.Ct. at 1567. In *Jefferson Parish,* the United States Supreme Court used market analysis and rule of reason to evaluate an exclusive contract for anesthesiology services.[8]

---

**8.** *Id.* at 5–18, 29–30, 104 S.Ct. at 1554–61. Even though *Jefferson Parish* is not a summary judgment case, it is relevant to the case now before this Court. *Jefferson Parish* was a declaratory judgment action which analyzed tying arrangements, a very specific and restricted type of trade restraint where a supplier refuses to sell one product unless the buyer purchases some separate product simultaneously. *Jefferson Parish,* 466 U.S. at 9–15, 104 S.Ct. at 1556–61. Nevertheless, the Court found that the exclusive anesthesiology contract (an even more restrictive arrangement than CGH's open staff policy) was not a violation of section 1 of the Sherman Act. "Without a showing of actual adverse effect on competition, respondent cannot make

In that declaratory judgment action, the Court held that the contract, which established a closed staff policy and limited the choice of anesthesiologists at one hospital to one of four doctors, did not restrain competition and did not violate the antitrust laws. *Id.* at 30–32, 104 S.Ct. at 1567–68. The Court based its decision on Plaintiff's lack of evidence that (1) patients' choice of anesthesiologists in the relevant market (City of New Orleans) was affected or that (2) the contract had an "actual adverse effect on competition." *Id.* at 30–33, 104 S.Ct. at 1567–69.

■■■ Similarly, Dr. Mosby has provided no evidence that competition was adversely affected or that the consumers' choice of radiologists was restricted by the Defendants' actions. Not only can CGH patients go outside the hospital for radiology services (which the Court found to be an adequate choice for Jefferson Hospital's patients), but they can also request other radiologists *within* CGH. The Plaintiff provides no evidence tending to show that the elimination of the on-call roster did not actually enhance patients' choices. The choice of radiologist was no longer limited to the doctor on call. In addition, the competition among radiologists to obtain referrals may also be enhanced by the Defendants' actions. Dr. Mosby can no longer rely on the on-call roster to guarantee him a minimum number of referrals from emergency evening and weekend patients. All of the staff radiologists, as well as Dr. Vutpakdi, are free to compete for referrals on the basis of price and service. Because Dr. Mosby has shown no adverse effect on competition resulting from Defendants' actions, he has failed to provide the specific facts necessary to establish this essential element of his antitrust claim.

## C. *Injury*

■■■ Injury in fact is an essential element of Dr. Mosby's cause of action.

*See Brunswick Corp. v. Pueblo Bowl-O-Mat Inc.,* 429 U.S. 477, 489 & 489 n. 14, 97 S.Ct. 690, 697 & 698 n. 14, 50 L.Ed.2d 701 (1977). "To survive petitioner's Motion for Summary Judgment in a private antitrust action, respondent must establish that there is a genuine issue of material fact as to whether petitioners entered into an illegal conspiracy that caused *respondents* to suffer a cognizable injury." *Matsushita,* 106 S.Ct. at 1355–56 (emphasis added). The Plaintiff must have evidence to support his claim. *Celotex,* 106 S.Ct. at 2554. Although Dr. Mosby alleges a conspiracy to damage his radiology practice, he has not come forward with specific facts to rebut the Defendants' summary judgment evidence that Dr. Mosby has suffered neither economic injury nor a reduction in his practice at CGH. Furthermore, Defendants allege that Dr. Mosby continued to practice in other hospitals in the Houston area, and Dr. Mosby alleges no adverse effect on his outside practice resulting from the Defendants' actions. Thus, Dr. Mosby has not shown the Court that an issue of fact exists with respect to this injury, which is one of the elements of his cause of action.

## CONCLUSION

The Supreme Court's findings in *Jefferson Parish* (which condoned great freedom in metropolitan hospital staffing policies) combined with its recent ruling in *Matsushita* (which approved the application of summary judgment in complex antitrust cases) supports this Court's conclusion that Defendants' Motion for Summary Judgment should be granted. The Plaintiff has failed to set forth specific facts which establish either a conspiracy or an unreasonable restraint of trade. The Defendants, however, have supported their Summary Judgment Motion with evidence which shows the absence of genuine issues of fact concerning conspiracy to restrain trade

out a case under the antitrust laws, and no such showing has been made." *Jefferson Parish,* 466

U.S. at 31, 104 S.Ct. at 1568.

and injury to the Plaintiff—the legal elements of Dr. Mosby's case. Furthermore, the Plaintiff has not sustained his burden under Rule 56(e) of setting forth specific facts to rebut the evidence supporting the Defendants' motion.[9] For those reasons, the Court enters Summary Judgment in favor of the Defendants, dismissing with prejudice the Plaintiff's antitrust claims.

## PENDENT STATE CLAIMS

In addition to the federal antitrust claim, Dr. Mosby has also alleged two pendent state claims. While this Court has discretion to exercise pendent jurisdiction over these claims, this Court is of the opinion that dismissal of the state claims is proper pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As stated in *Gibbs*, "if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. *See also Ingram v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1317–20 (5th Cir.1983). As Dr. Mosby's federal claim has been dismissed by this Court, only the state law claims of Tortious Interference with a Contractual Relationship and Slander remain. Pursuant to the principles set forth in *Gibbs*, this Court dismisses the Plaintiff's state claims without prejudice.

## ORDER

For all of the above reasons, it is

ORDERED that Plaintiff's alleged first cause of action for restraint of trade under section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (1984), be DISMISSED WITH PREJUDICE.

It is further

ORDERED that Plaintiff's two pendent state law causes of action for (1) Tortious Interference with a Contractual Relationship and (2) Slander be DISMISSED WITH-OUT PREJUDICE for lack of subject matter jurisdiction.

---

9. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some meta-physical doubt as to the material facts." *Matsushita*, 106 S.Ct. at 1356. *See also Celotex*, 106 S.Ct. at 2553–54.