No. 84–761. DATA GENERAL CORP. *v.* DIGIDYNE CORP. ET AL. C. A. 9th Cir. Certiorari denied.

JUSTICE WHITE, with whom JUSTICE BLACKMUN joins, dissenting.

Petitioner in this case manufactured and sold a central processing unit for computers known as NOVA. Petitioner also created and sold a copyrighted operating system for NOVA called RDOS. RDOS was a very popular operating system, but petitioner's licensing agreement prevented customers from using it with any central processing unit other than petitioner's NOVA.

Respondents sued, claiming that petitioner's marketing strategy amounted to an illegal tie-in in violation of the antitrust laws. After a jury trial, the District Court granted petitioner's motion for a judgment notwithstanding the verdict, defining the appropriate market as the "market for general purpose minicomputers and microprocessors." *In re Data General Corp. Antitrust Litigation,* 529 F. Supp. 801, 821 (ND Cal. 1981). No reasonable juror could find, the court determined, that within this large and dynamic market with much larger competitors petitioner had the market power to restrain trade through an illegal tie-in arrangement. The Court of Appeals for the Ninth Circuit reversed and reinstated the jury verdict in favor of respondents. 734 F. 2d 1336 (1984). The court concluded that the tying arrangement was illegal *per se,* because petitioner's RDOS operating system was sufficiently unique and desirable to an appreciable number of buyers to enable petitioner to force those consumers to buy its tied product, the NOVA central processing unit.

The Court of Appeals' decision in this case is suspect on several grounds. As we have consistently explained, a particular tying arrangement may have procompetitive justifications, and it is thus inappropriate to condemn such an arrangement without considerable market analysis. *National Collegiate Athletic Assn.* v. *Board of Regents of Univ. of Okla.,* 468 U. S. 85, 104, n. 26 (1984); *Jefferson Parish Hospital District No. 2* v. *Hyde,* 466 U. S. 2, 11–14 (1984). Anticompetitive forcing only exists if consumers are forced to buy a tied product as a result of the

sellers' market power, not simply because of the desirability of the package. *Id.*, at 24–25. The Court of Appeals looked to market power over "locked in" customers who had already purchased petitioner's wares, viewed the copyright on the operating system as creating a presumption of market power, and seemingly concluded that forcing power is sufficiently established to demonstrate *per se* antitrust liability if some buyers find the tying product unique and desirable.

Drawing distinctions between the permissible and the forbidden in this area is difficult, and the posture of this case—a jury verdict overturned by the District Court but reinstated on appeal—creates an additional layer of complexity, since each court below took a different view of what facts were relevant. Nonetheless, this case raises several substantial questions of antitrust law and policy, including what constitutes forcing power in the absence of a large share of the general market, whether market power over "locked in" customers must be analyzed at the outset of the original decision to purchase, and what effect should be given to the existence of a copyright or other legal monopoly in determining market power.

At stake is more than the resolution of this single controversy or even the clarification of what may seem at times to be a collection of arcane legal distinctions. In the highly competitive, multibillion dollar a year computer industry, bundling of software and hardware, or of operating systems and central processing units, is somewhat common, and any differentiated product is especially attractive to some buyers. The reach of the decision in this case is potentially enormous, and as the United States strongly urges us to do, I would grant certiorari to address the substantial issues of federal law presented.