Russell BOWER, et al., for themselves and all persons similarly situated, Plaintiffs,

v.

The BUNKER HILL
COMPANY, Defendant.

Russell BOWER, et al., for themselves and all persons similarly situated, Plaintiffs,

v.

GULF RESOURCES AND CHEMICAL
COMPANY, et al., Defendants.

Nos. C–82–412 RJM, C–85–087 RJM.

United States District Court,
E.D. Washington.

Dec. 23, 1986.

Stephen P. Berzon, Fred H. Altshuler, George C. Harris, Altshuler & Berzon, San Francisco, Cal., Robert H. Gibbs, Gibbs, Drachler, Theiler & Drachler, Seattle, Wash., William T. Payne, United Steelworkers of America, Pittsburgh, Pa., for plaintiffs.

William F. Boyd, Evans, Keane, Koontz, Boyd & Ripley, Kellogg, Idaho, Eugene Annis, Annis & Lukins, Spokane, Wash., for defendants.

## ORDER DENYING BUNKER HILL'S POST–TRIAL MOTIONS AND DIRECTING ENTRY OF JUDGMENT PURSUANT TO RULE 54(b)

ROBERT J. McNICHOLS, Chief Judge.

Plaintiffs represent a class of present and future retirees of the Bunker Hill Company. Hourly employees of the company were represented by several unions. In the collective bargaining sessions between Bunker Hill and the unions, Bunker agreed to provide medical benefits to its retirees. Salaried workers were not represented by unions. However, Bunker Hill agreed to provide them with the same medical benefits upon their retirement as were provided to the hourly employees.

This dispute arose in 1982 following Bunker Hill's decision to shut down its operations. Retirees were notified that their medical benefits would be terminated. Plaintiffs alleged that their rights to medical benefits were vested and could not be unilaterally terminated by Bunker Hill. They commenced this action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 and Sections 502(A)(1)(B), (a)(2), and (a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), (a)(2), and (a)(3) seeking declaratory and injunctive relief and damages for the alleged wrongful termination of their benefits. Liability of Gulf Resources was predicated on an "alter ego" theory.

Trial of this case was bifurcated. Liability issues pertaining to the alleged breach of the collective bargaining agreements by Bunker Hill and the joint liability of Gulf Resources under the alter ego theory were tried to a jury which rendered its verdict in favor of the plaintiffs and against both defendants. Plaintiffs' ERISA claims and the damage phase of this litigation remain to be tried. Presently before the court are defendant Bunker Hill's motions for judgment notwithstanding the verdict or in the alternative, for a new trial pursuant to Rules 50 and 59, Fed.R.Civ.P.[1] The bases for the motions are that the verdict is not supported by the evidence and that the instructions given by the court contained certain errors and omissions. For reasons that follow, Bunker Hill's motions will both be denied.

A motion for judgment notwithstanding the verdict which is directed towards the sufficiency of the evidence can be granted "only when the evidence 'viewed most favorably to the party against whom the verdict is directed cannot support a verdict in that party's favor.' A verdict in the plaintiff's favor will be upheld if supported by substantial evidence." *Criswell v. West-*

---

1. Identical motions were also timely filed by defendant Gulf Resources. Pursuant to a stipulation between counsel (Ct.Rec. 431), the court will defer ruling on Gulf's motions until March 1, 1987. The court will also defer ruling on the pending damages issues as well.

*ern Airlines, Inc.*, 709 F.2d 544, 551 (9th Cir.1983), *aff'd*, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).

A motion for a new trial invokes a standard which allows the trial court considerably more discretion. A verdict may be set aside and a new trial ordered when the verdict rendered is "contrary to the clear weight of the evidence, or to prevent, in the trial court's discretion, a miscarriage of justice." *Peacock v. Board of Regents, etc.*, 597 F.2d 163, 165 (9th Cir.1979). Motions for a new trial directed towards the sufficiency of the evidence may be granted if the verdict is against the "great weight" of the evidence or "it is quite clear that the jury has reached a seriously erroneous result." *Digidyne Corp. v. Data General Corp.*, 734 F.2d 1336, 1347 (9th Cir.1984) (citations omitted), *cert. denied*, 473 U.S. 908, 105 S.Ct. 3534, 87 L.Ed.2d 657 (1985).

The course taken at the trial of this case was largely foreshadowed by *Bower v. Bunker Hill Co.*, 725 F.2d 1221 (9th Cir. 1984) (reversing the summary judgment entered by this court in favor of Bunker Hill). The Court of Appeals held that the "contract language does not speak to the vesting issue" and directed this court to consider extrinsic evidence to determine the parties' intent. In this regard, the Circuit identified three specific areas of extrinsic evidence to be considered: (1) summary plan description; (2) management representations; and, (3) provision of benefits during the 1977 strike.

At trial, plaintiffs introduced a document entitled "Summary of Medical-Surgical-Hospital Benefits for Retired Employees, Surviving Spouses of Retired Employees and Their Eligible Children." As the Circuit previously observed, this document stated only one eligibility requirement for receiving insurance-that the applicant be "receiving a pension from the Bunker Hill

Company." The language of the document prompted the following comments by the court:

> "Since the pension is lifelong, employees may have viewed the related insurance also to be a lifelong benefit. Moreover, the summary description assures pensioners that, upon their death, their 'children and surviving spouse may continue to be covered.' Such language suggests that retirement insurance benefits may not have been limited to the duration of the collective bargaining agreements."

*Id.* at 1224. The document contained a disclaimer which referred the reader to a copy of the contract at the company's personnel office. Prior to trial, the defendants argued that the referenced contract was the "Plan Document" which contained a reservation of rights clause allowing Bunker Hill to amend or terminate the plan at any time. However, the only evidence presented on the Plan Document at trial was that it was meant to govern the relationship between Bunker and its insurance carrier MSB. There was no evidence that the Plan Document itself had ever been distributed to any retiree. In any event, the adequacy of the disclaimer presented a question of fact. The jury would have been justified in finding that the disclaimer was insufficient or that it was intended only to govern the Bunker-MSB relationship.

Plaintiffs also introduced copies of the "Summary Plan Descriptions" which were distributed to all employees in accordance with ERISA requirements. There was no indication in the documents that retiree benefits could be terminated in the event of a shutdown or at the expiration of the collective bargaining agreements. In fact, a specific section addressing the conditions which would result in termination was completely silent on the issue.

Even more telling were the representations of company officials. Union negotiators who bargained for the 1973 agreements on behalf of the Steelworkers testified that during the negotiations, they specifically raised the issue of duration of retiree medical and were assured by Art Len-

non, the company's chief negotiator on the subject, that the benefits would continue for the lifetime of the retirees. In addition, several retirees testified that during retirement interviews with Art Lennon, they were told that their benefits would be for life. This testimony was corroborated by Art Lennon's assistants who on more than one occasion had been present or overheard such conversations. Two former union presidents also testified that Art Lennon had told them that the benefits were to be for life.

Several documents addressed to the trust department of the bank that was administering the pension plan were introduced. The documents were signed by Art Lennon and instructed the bank to make a deduction from the retiree's pension for his or her portion of the medical coverage. The last paragraph of one such letter states: "The above payment is to be made on July 1, 1978 and a similar amount on the first day of each month thereafter as long as the retired participant is living." Other letters were similar and some contained additional language explaining that the amount should also be deducted in the event a surviving spouse continued to receive a pension.

Finally, evidence of the company's conduct was introduced which directly controverted Bunker Hill's claim that the benefits were to run only for the term of each successive collective bargaining agreement. During a four-month strike in 1977, the company continued to provide insurance benefits to retirees. The Circuit previously determined that this was suggestive of benefits which were "not tied to the term of the labor-management agreement." *Id.* at 1225. Similar action was taken by Bunker Hill following the shutdown of the Pend Oreille mine in 1977. Although the collective bargaining agreements were no longer in effect, retirees continued to receive medical benefits until the 1982 cutoff. The documents governing benefits for the Pend Oreille employees were almost identical to those governing the Bunker Hill employees and it was undisputed that they received identical benefits.

In sum, the jury's verdict was not only supported by substantial evidence, it was in accordance with the clear weight of the evidence. In fact, under the law of this case, the evidence presented may well have entitled the plaintiffs to summary judgment. *See also, International Union, United Auto., Aero. Etc. v. Yard-Man,* 716 F.2d 1476 (6th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984). Accordingly, defendant Bunker Hill's motions directed towards the sufficiency of the evidence must fail.

■ The remainder of Bunker Hill's arguments address alleged deficiencies in the jury instructions. First, Bunker argues that it was error for the court to instruct the jury that the contracts were reasonably susceptible of more than one interpretation. The instruction given by the court is based upon the Circuit's finding that the contracts were ambiguous and is an accurate statement of the law. *Bower,* 725 F.2d at 1225; *See also, Castaneda v. Dura-Vent Corp.,* 648 F.2d 612, 619 (9th Cir.1981) ("A contract ... is ambiguous if it is reasonably susceptible of more than one interpretation.")

Next, Bunker argues that it was error to allow the jury to consider evidence on the "deferred vested" group of employees. This argument has already been addressed at some length in this court's Memorandum and Order of October 16, 1986 at 12–15 and need not be repeated here. Factually, there has been no further showing by the defendant that the condition contained in the "Summary Plan Description" was in any way meant to cover a shutdown of the plant. The evidence introduced by the plaintiffs in opposition to the defendant's summary judgment motion and again at trial remains uncontroverted. Under the evidence, the jury was entitled to conclude that the condition did not apply to employees who were involuntarily laid off following the shutdown. Bunker Hill has offered no persuasive reason to disturb the jury's verdict.

■ Lastly, Bunker argues that the court erred in failing to instruct the jury on mutuality of intent; on the fact that medi-

cal benefits are not status benefits; and, on the fact that Bunker had the right to cease business resulting in termination of the labor-management contracts. On the issue of mutuality of intent, the jury was instructed that plaintiffs "bear the burden of establishing by a preponderance of the evidence ... that *both* parties intended that the medical benefits which Bunker Hill agreed to provide to its retirees was [sic] to be for the duration of their retirement." (emphasis supplied) (Court's Instruction No. 7) (Ct.Rec. No. 417.) I believe that this instruction adequately addressed plaintiffs' burden.

■ Defendant's two remaining assignments of error are equally without merit. Their argument in favor of an instruction that retiree medical benefits are not status benefits borders on an incorrect statement of the law. *See, Yard-Man*, 716 F.2d at 1482 ("[r]etiree benefits are in a sense 'status' benefits which, as such, carry with them an inference that they continue so long as the prerequisite status is maintained.") Defendants were certainly not prejudiced by the court's treatment of this issue. Plaintiffs requested, and perhaps may have been entitled to an instruction that a specific inference could be drawn from the fact that these benefits were conferred on retired individuals. Instead of giving plaintiffs' proposed instruction, both parties were given the opportunity to argue that such an inference was or was not appropriate under the facts of this case.

■ Likewise, I fail to see how Bunker was prejudiced by the court's failure to specifically instruct on its authority to shut down operations. This was not an issue in the case and was not made so by the plaintiffs. In any event, counsel were given more than adequate opportunity to make this point clear to the jury.

Based upon the foregoing, defendant Bunker Hill's motions for judgment notwithstanding the verdict or in the alternative for a new trial are hereby denied. The jury having rendered General Verdicts accompanied by Answers to Interrogatories on November 24, 1986, in favor of the plaintiffs and the class they represent and against defendants Bunker Hill Company and Gulf Resources and Chemical Corporation with respect to plaintiffs' claims against said defendants under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

(1) Defendant Bunker Hill Company (now known as the Pintlar Corporation) shall reinstate the medical benefit coverage for retirees which was in effect on May 14, 1982, as set forth in the Plan Document dated January 1, 1979, as amended on December 29, 1980, to all persons (and their unremarried spouses and dependent children as defined in said Plan Document, as amended) who had retired from active employment from the Bunker Hill Company, or who were eligible to retire, on May 15, 1982.

(2) Defendant Bunker Hill Company shall provide the same medical benefit coverage stated above to all persons (and their unremarried spouses and dependent children) who were involuntarily laid off or terminated after August 25, 1981, from employment with the Bunker Hill Company because of the shutdown of the company, and who are now receiving a pension for their work for the Bunker Hill Company.

(3) For all persons who were involuntarily laid off or terminated after August 25, 1981, from employment with the Bunker Hill Company because of the shutdown of the Company, and who are not presently receiving a pension for their work for the Company, defendant Bunker Hill Company shall provide such persons (and their unremarried spouses and dependent children) with the same medical benefit coverage stated above if and when they begin receiving a pension for their work for the Bunker Hill Company.

(4) The medical benefit coverage specified above shall commence on February 2, 1987 and shall be continued throughout the life of each retiree and unremarried spouse specified in Paragraphs 1, 2, and 3 above.

There is no just cause for delay and pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is hereby di-

rected to enter this Judgment.[2] This court shall retain jurisdiction over this case with respect to all remaining issues, claims and relief.

IT IS SO ORDERED.

---

2. This judgment is entered only against Bunker Hill. As previously noted, the court will defer ruling on defendant Gulf Resource's pending motions and entry of judgment against Gulf will abide the outcome of the court's ruling on those motions. Pursuant to stipulation, defendant Bunker Hill will provide the above-described coverage throughout the pendency of any appeal by any party, and defendant Gulf Resources agrees that it will loan Bunker Hill sufficient funds to provide such coverage pending appeal regardless of how the court ultimately rules on Gulf's post trial motions.