**TOWN SOUND AND CUSTOM TOPS, INC., Suburban Auto Sound & Communications, Inc., Northeast Electronics, Inc. and Dominion Radio Supply, Inc., on Behalf of Themselves and all others Similarly Situated**

v.

**CHRYSLER MOTOR CORP.**

Civ. A. No. 88–0083.

United States District Court, E.D. Pennsylvania.

July 3, 1990.

Donald B. Lewis, Philadelphia, Pa., Dickstein Shapiro & Morin, Washington, D.C., for plaintiffs.

Arthur Makadon, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., Joseph Angland, Dewey Ballantine Bushby Palmer & Wood, New York City, pro hac vice, Gerald M. Rosberg, Dewey Ballantine Bushby Palmer & Wood, Washington, D.C., pro hac vice, Lewis H. Goldfarb, Chrysler Motors, Detroit, Mich., pro hac vice, for defendant.

## MEMORANDUM AND ORDER

DuBOIS, District Judge.

Plaintiffs brought this proposed antitrust class action against the defendant, Chrysler Motors Corp. ("Chrysler"), asserting claims under Section 1 of the Sherman Act, 15 U.S.C. § 1[1], and Section 3 of the Clayton Act, 15 U.S.C. § 14[2]. The Court has jurisdiction over the suit under 15 U.S.C. § 15 and 28 U.S.C. § 1337.

Plaintiffs allege that Chrysler has created an unlawful tying arrangement through its sale of car radios and cassette players—*i.e.* automotive sound equipment—as a standard feature on its vehicles. Plaintiffs seek to enjoin Chrysler from continuing to make such sales and to recover damages from Chrysler as a result of past sales.

Presently before the Court is Chrysler's Motion for Summary Judgment. For the reasons set forth below, the Court will grant the Motion.

## I. BACKGROUND

Plaintiffs are four independent corporations which distribute and install automotive sound equipment. Plaintiffs sell automotive sound equipment to automobile dealers for installation either by the dealer or by the plaintiffs. Plaintiffs also sell automotive sound equipment directly to consumers through retail outlets operated by the plaintiffs and through distribution to independent retailers.

Defendant Chrysler is a corporation which manufactures and sells motor vehicles. Chrysler manufactures many of the components of its vehicles, including automotive sound equipment. Chrysler also purchases automotive sound equipment from independent suppliers. Chrysler sells its vehicles to consumers through a network of retail dealers located throughout the United States.

Chrysler does not dispute plaintiffs' allegations regarding Chrysler's sale of automotive sound equipment as a standard feature.[3] Between 1983 and the present, Chrysler has steadily increased the number of its vehicles sold with automotive sound equipment as a standard feature. At present, Chrysler sells approximately 97 percent of its vehicles with automotive sound equipment as a standard feature. *See* Complaint ¶¶ 34–41

In their proposed class action, plaintiffs seek to represent all distributors and installers of automotive sound equipment who compete or have competed against Chrysler since January 1, 1984, for the sale and installation of automotive sound equipment in Chrysler vehicles. *See* Complaint ¶¶ 8–15.

## II. STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. Rule 56(c).

When a motion for summary judgment is made, the adverse party "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. Rule 56(e). If the adverse party fails to set forth such material facts, summary judgment shall be entered against the party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355, 89

---

1. *See,* note 23, *infra.*

2. *See,* note 24, *infra.*

3. A standard feature is a feature for which the customer cannot obtain a credit against the base price of the automobile even if the feature is not purchased. A delete option, by contrast, is a feature for which a credit is given to the customer if the feature is not purchased.

L.Ed.2d 538 (1986); *see also Equimark Comm. Fin. Co. v. C.I.T. Fin. Serv. Corp.,* 812 F.2d 141 (3rd Cir.1987).

■ Plaintiffs argue that summary judgment is inappropriate in complex antitrust suits. The Court disagrees. Although summary judgment should be used sparingly in complex antitrust suits, *see Poller v. Columbia Broadcasting Systems, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), it is appropriate in such suits where trial would merely result in delay and expense. *See, e.g., A.I. Root Co. v. Computer/Dynamics, Inc.,* 615 F.Supp. 727 (N.D. Ohio 1985), *aff'd* 806 F.2d 673 (6th Cir. 1986); *Harold Friedman, Inc. v. Kroger Co.,* 581 F.2d 1068, 1080 (3rd Cir.1978); *Tripoli Co. v. Wella Corp.,* 425 F.2d 932, 935 (3rd Cir.1970), *cert. denied,* 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970) cited in *Chuy v. Philadelphia Eagles,* 407 F.Supp. 717, 721 (E.D.Pa.1976).

Furthermore, of the antitrust suits which have been summarily dismissed, several involve alleged tying violations. *See, e.g., Robert's Waikiki U–Drive, Inc. v. Budget Rent–A–Car Systems, Inc.,* 491 F.Supp. 1199 (D.Hawaii 1980), *aff'd* 732 F.2d 1403 (9th Cir.1984); *Tominaga v. Shepherd,* 682 F.Supp. 1489 (C.D.Cal.1988); and *Klo-zik Co. v. General Motors Corp.,* 677 F.Supp. 499 (E.D.Tex.1987).

## III.  DISCUSSION

■ A tying arrangement is defined as "an agreement by a party to sell one product [the tying product] but only on the condition that the buyer also purchases a different (or tied) product." *Northern Pacific R. Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). The antitrust laws do not prohibit all tying arrangements. Only those tying arrangements which are anticompetitive in defined markets are unlawful. In order to determine whether a tying arrangement is unlawful, courts have relied on the *per se* rule and the rule of reason. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984) (5–4 majority reaffirmed use of both standards in tying cases). Under the *per se* rule, a tying arrangement is presumed unlawful—without inquiry into the effects in the market—if the seller has market power over the tying product. Absent a *per se* violation, a tying arrangement may be found unlawful under the rule of reason. The rule of reason requires proof of an actual unreasonable restraint of trade in the market for the tied product. Accordingly, in deciding the Motion for Summary Judgment, the Court will consider Chrysler's sales practice under each of these standards.

### A.  Per Se Rule

■ In order to establish a tying arrangement as *per se* unlawful, the plaintiff must prove the following three elements: (1) the tie links two separate products with distinct markets; (2) the tie affects a not insubstantial amount of interstate commerce; and (3) the seller has market power over the tying product. *See generally Jefferson Parish* 466 U.S. at 13–22, 104 S.Ct. at 1558–64; *see also Grappone, Inc. v. Subaru of New England, Inc.,* 858 F.2d 792 ("*Grappone*") (1st Cir.1988).

For purposes of this Motion, the parties agree that Chrysler is selling separate products in separate markets and that Chrysler's sale of automotive sound equipment affects a not insubstantial amount of interstate commerce. That leaves for determination the question whether there is any evidence that Chrysler has market power over the tying product. Chrysler contends that it has no such market power in any plausibly defined market, and the Court agrees.

#### 1.  The Tying Product Market

■ In order to determine whether Chrysler has market power over the tying product, it is essential to define the tying product market. *See, e.g. Drs. Steuer & Latham, P.A. v. National Medical Enterprises* 672 F.Supp. 1489 (D.S.C.1987). The product market has been defined in antitrust cases not involving tying arrangements as the "areas of effective competition" within which a seller operates. *Standard Oil Co. of California v. United States,* 337 U.S. 293, 299 n. 5, 69 S.Ct. 1051,

1055 n. 5, 93 L.Ed. 1371 (1949). Specifically, a product market is "composed of products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." *United States v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 404, 76 S.Ct. 994, 1012, 100 L.Ed. 1264 (1956); *Brown Shoe Co. v. United States*, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962); *see also SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1063 (3d Cir.), *cert. denied*, 439 U.S. 838, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978). These same principles of market definition have been relied on by courts when defining product markets for purposes of a tying analysis. *See, e.g. Allen–Myland, Inc. v. IBM Corp.*, 693 F.Supp. 262 (E.D.Pa.1988) (court rejected plaintiffs' proposed tying product market limited to IBM's own product line); *see also A.I. Root Co. v. Computer/Dynamics, Inc.* 806 F.2d 673 (6th Cir.1986) (same); *Will v. Comprehensive Accounting Corp.* 776 F.2d 665 (7th Cir.1985) (same); *Hudson's Bay Co. v. American Legend Cooperative* 651 F.Supp. 819 (D.N.J.1986) (same).

Chrysler argues that the tying product market is all automobile manufacturers which compete with Chrysler for the sale of automobiles in the United States. In support of its market definition, Chrysler has provided the Court with uncontroverted affidavits demonstrating that Chrysler automobiles are reasonably interchangeable with, and compete against, the automobiles produced by other manufacturers. Chrysler's submissions on that issue are not directly addressed or contested by plaintiffs[4] and may be summarized as follows:

First, consumers perceive Chrysler automobiles as reasonably interchangeable with other automobile makes. Market studies submitted by Chrysler state that prospective new buyers commonly compare Chrysler's product offerings with the offerings of other manufacturers.[5] A wide range of factors—including price, features, aesthetic appeal, reputation, and comfort—enter into such comparisons, and Chrysler's sales depend directly upon its ability to impress consumers favorably with respect to these factors.[6]

Second, Chrysler's advertising stresses the price and qualities of its vehicles in comparison to those of its competitors.[7] Furthermore, the automotive media—which consumers often consult before purchasing motor vehicles—perceive Chrysler vehicles as competing against comparable vehicles made by other manufacturers. The automotive media routinely evaluate Chrysler's vehicles in comparison to those of other manufacturers.[8]

Third, Chrysler is constrained in pricing its vehicles by the prices its competitors charge for comparable vehicles.[9] This pricing constraint reflects the cross-elasticity of demand that exists between Chrysler vehicles and the vehicles produced by its competitors.[10]

Fourth, the business and financial communities and government agencies view Chrysler as competing for sales against other automobile manufacturers. Market studies by these groups analyze the different automobile producers, including Chrysler, as competing in the same market.[11]

Based on the foregoing, the Court defines the tying product market as all automobile manufacturers which compete with Chrysler for the sale of automobiles in the United States.

---

**4.** *See* Section IV, *infra.*

**5.** Affidavit of Jack L. Warren, ¶ 7.

**6.** *Id.* ¶ 6.

**7.** *Id* ¶ 9.

**8.** *Id* ¶ 12.

**9.** Affidavit of Franklin M. Fisher, ¶ 15.

**10.** Two goods exist in the same market if there is a relatively high cross-elasticity of demand between the goods. Two goods have a relatively high cross-elasticity of demand if an increase in the price of one good results in an increase in consumption of the other good. *See, e.g. Brown Shoe Co. v. United States,* 370 U.S. 294, 325, 82 S.Ct. 1502, 1523, 8 L.Ed.2d 510 (1962).

**11.** Affidavit of Franklin M. Fisher ¶ 9.

## 2. Definition of Market Power

■ For purposes of a tying violation, market power has a precise meaning. In *Jefferson Parish,* the Supreme Court defines market power in a tying case as follows: "As an economic matter, market power exists whenever prices can be raised above the levels that would be charged in a competitive market." *See Jefferson Parish* 466 U.S. at 26, n. 46, 104 S.Ct. at 1565, n. 46. *See also United States Steel Corp v. Fortner Enterprises Inc.* 429 U.S. 610, 620, n. 13, 97 S.Ct. 861, 868, n. 13, 51 L.Ed.2d 80 (1977) (market power is defined as "power over price"). In *Jefferson Parish,* the Supreme Court also stated that evidence of market power may be shown by: (1) exclusive control over the market through a patent or copyright; (2) domination of the market as evidenced by a high market share; or (3) a unique product that competitors are not able to offer. *See Jefferson Parish* 466 U.S. at 16–17, 104 S.Ct. at 1560–61.

■ In this case, Chrysler argues that it does not have market power because Chrysler cannot raise prices above competitive levels in the automobile market and profitably sustain prices at that level.[12] Chrysler has provided the Court with uncontroverted affidavits demonstrating that Chrysler is a "price-follower" in the automobile market and plaintiffs' submissions do not directly address or contest these submissions.[13] As a "price-follower", Chrysler increases the prices of its vehicles following an increase in prices throughout the automobile industry. If Chrysler were to unilaterally raise its prices, other automobile manufacturers would not follow suit and Chrysler would lose sales.[14] Accordingly, the Court finds that Chrysler does not have "power over price" in the tying product market.

The Court must also address the other market conditions set forth in *Jefferson Parish* which may provide evidence of market power. A review of all submissions by the parties discloses no evidence of market power by Chrysler based on these market conditions. First, this case does not involve control over a market through a patent or copyright. Although Chrysler may have patents on individual parts of its automobiles, Chrysler does not have, and plaintiffs do not allege, control by Chrysler over a market through such patents.

Second, in terms of market share, Chrysler does not have the level of market share in the tying product market associated with market power. From 1983 to the present, the time period relevant to this litigation, Chrysler has sold 10 to 12 percent of the new cars sold in the United States.[15] General Motors, by contrast, has sold 35 to 45 percent of the new cars sold, and Ford has sold 17 to 20 percent of the market. Furthermore, several foreign manufacturers, Honda, Toyota, and Nissan, each have 5 to 7 percent of the market.[16]

Although there is no fixed threshold of market share required for market power and market share is but one measure of a seller's market power, Chrysler's 10 to 12 percentage share of the automobile market is considerably below the level of market share associated with market power. *See, e.g. Jefferson Parish* 466 U.S. at 26–27, 104 S.Ct. at 1565–66 (30 percent market share insufficient for market power); *Times–Picayune Pub. Co. v. United States,* 345 U.S. 594, 611–613, 73 S.Ct. 872, 881–83, 97 L.Ed. 1277 (30 to 40 percent market share insufficient for market power); *Allen–Myland* 693 F.Supp. at 278 (20 to 30 percent market share insufficient for market power).

---

**12.** Although not expressly stated in *Jefferson Parish,* market power exists whenever the seller can raise prices above competitive levels in the marketplace and profitably sustain prices at that level.

**13.** *See* Section IV, *infra.*

**14.** Affidavit of Franklin M. Fisher, ¶ 15 ("Chrysler's pricing is significantly constrained by its

... competitors. The marketplace would quickly defeat any attempt by Chrysler to unilaterally raise prices to supracompetitive levels."); *see also* Affidavit of Omar Matt, ¶ 9.

**15.** Affidavit of Franklin M. Fisher, Appendix B (*citing Ward's Automotive Yearbook 1988,* p. 161).

**16.** *Id.*

Furthermore, even if the Court defined a tying product market based on subsections of the automobile market, such as geographic regions or automobile types, Chrysler does not have the level of market share required for market power in any such subsection. On the contrary, Chrysler maintains a similar 10 to 12 percentage share of the automobile market across various geographic regions and vehicle lines.[17] *See also Grappone, supra,* 858 F.2d at 797.

Third, for a showing of "uniqueness", the emphasis is not on whether the seller is selling a factually unique product; rather, the emphasis is on whether the seller has some advantage not shared by its competitors in the marketplace. *See Fortner* 429 U.S. at 620, 97 S.Ct. at 867 (1977). This advantage has been defined by the courts in terms of barriers to entry into the marketplace. "If competitors can design and offer a package similar to defendant's product for a similar cost, there is no barrier and no market power, and hence no special advantage for purposes of establishing 'uniqueness.'" *Allen–Myland* 693 F.Supp. at 281; *Will v. Comprehensive Accounting Corp.* 776 F.2d 665 (7th Cir. 1985).[18]

■ In this case, plaintiffs do not suggest that Chrysler has market power through barriers to entry into the marketplace. Rather, plaintiffs' theory on uniqueness is that Chrysler has market power through its unique and well-known trademark. The fact that Chrysler's vehicles bear a "unique" trademark does not raise an issue of fact as to market power. Although, at one time, some courts viewed the existence of a trademark as sufficient for market power, *see, e.g. Warriner Hermetics v. Copeland Refrigeration Corp.,* 463 F.2d 1002 (5th Cir.), *cert denied,* 409 U.S. 1086, 93 S.Ct. 688, 34 L.Ed.2d 673 (1972), no cases since *Jefferson Parish* have held that a trademark alone establish-

es market power. *See, e.g. Mozart Co. v. Mercedes–Benz of North America, Inc.* 833 F.2d 1342, 1346 (9th Cir.1987); *Will v. Comprehensive Accounting Corp.* 776 F.2d 665, 673 n. 4 (7th Cir.1985), *cert denied,* 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986). Accordingly, the Court finds that Chrysler's trademark does not raise an issue of fact as to Chrysler's market power.

For all the foregoing reasons, the Court finds that Chrysler does not have market power in the tying product market. Accordingly, plaintiffs are unable to sustain their *per se* tying claim.

### B. *Rule of Reason*

■ To establish a tying violation under the "rule of reason", plaintiffs—at a minimum—have to demonstrate that the alleged tying arrangement actually forecloses competition in the market for the tied product or is anticompetitive in the tied product market. *See Jefferson Parish* 466 U.S. at 17–18, 104 S.Ct. at 1560–61; *see also Grappone* 858 F.2d at 799.

#### 1. Market Effect in the Tied Product Market

■ The first question before the Court is to define the tied product market. In defining this market, the Court will rely on the same principles of market definition adhered to by the Court in defining the tying product market. Chrysler argues that the tied product market is all sound equipment sold in the United States for installation in automobiles. Chrysler's uncontroverted facts on that issue may be summarized as follows:

Many of the automobile manufacturers—*e.g.* Chrysler, General Motors, and Ford—manufacture sound equipment for installation in automobiles. Furthermore, many independent firms—*e.g.* Sony, Pioneer, Kenwood, Audiovox—also manufacture

---

**17.** Affidavit of Franklin M. Fisher, ¶ 12, 13.

**18.** "The use of barriers to entry as a proxy for market power is familiar in the law of mergers. Unless barriers to entry prevent rivals from entering the market at the same cost of produc-

tion, even a very large market share does not establish market power." (citations omitted) *Will v. Comprehensive Accounting Corp.* 776 F.2d 665, 672, n. 3 (1985).

sound equipment for automobiles.[19] Chrysler's automotive sound equipment is not unique. Most of the manufacturers of automotive sound equipment produce systems that are *capable* of use in Chrysler vehicles and the vehicles of every other automobile manufacturer. Thus, systems designed by Chrysler for installation in Chrysler vehicles compete—either actually or *potentially*—against the systems manufactured by other automotive sound equipment manufacturers for installation in other vehicles. *See SmithKline* 575 F.2d at 1063 (product market defined to include all relevant sources of supply, including *potential* as well as actual rivals).

Based on the foregoing, the Court defines the tied product market as all sound equipment sold in the United States for installation in automobiles.

In the tied product market—*i.e.* the market for automotive sound equipment—Chrysler's share of the market is limited. There are over 70 distributors of automotive sound equipment in the United States, and most distributors, including Chrysler, have less than a 10 percent share of the automotive sound equipment market.[20] During the time period relevant to this litigation, Chrysler's share of the automotive sound equipment market has ranged from approximately 3 to 7 percent of the market.[21] Chrysler's limited share of the tied product market is such that Chrysler is not in a position to restrain trade or foreclose competition in the market.

Although plaintiffs offer depositions alleging that certain individual distributors of automotive sound equipment have lost sales,[22] these depositions do not demonstrate that Chrysler has either foreclosed competition or restrained trade in the market for automotive sound equipment. Under the antitrust laws, the concern is with maintaining the level of competition in the marketplace, not in ensuring that every individual competitor is protected. *See*

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

In the record before the Court, plaintiffs have not demonstrated an actual restraint of trade in the market for automotive sound equipment. Accordingly, without any evidence of a restraint of trade in the tied product market by Chrysler, plaintiffs are unable to sustain a tying violation under the rule of reason.

2. Market Power over Tying Product for Rule of Reason Violation

■ Although the majority opinion in *Jefferson Parish* states that a rule of reason violation may be established without the same "degree or kind" of market power that is required for a *per se* violation, *see Jefferson Parish*, 466 U.S. at 19, 104 S.Ct. at 1561, the majority opinion nowhere states or implies that market power over the tying product is not required under the rule of reason.

The requirement of market power over the tying product is consistent with the elements of a tying violation. Market power over the tying product is what makes possible an adverse effect on competition in the tied product market. Unless the seller has market power over the tying product, the seller is not able to restrain competition in the market for the tied product. Both the concurrence in *Jefferson Parish*, and decisions subsequent to *Jefferson Parish*, have held that market power over the tying product is a required element under either the *per se* rule or rule of reason. *See Jefferson Parish* (O'Connor, concurring); *see also Hand v. Central Transport, Inc.*, 779 F.2d 8, 11 (6th Cir.1985) (market power required under rule-of-reason tying analysis); *see also Hudson's Bay Co. Fur Sales v. American Legend Co–Op*, 651 F.Supp. 819, 841 (D.N.J.1986) (same).

As set forth above, Chrysler does not have market power in the tying product

---

**19.** *See* Affidavit of Joseph Clifton Mathis.

**20.** Affidavit of Franklin M. Fisher (*citing* Venture Development Corporation, *Automobile Stereo Equipment III, A Strategic Analysis,* September, 1986).

**21.** *Id.*

**22.** Dep. Daniel M. McGrath, at p. 101.

market; in fact, Chrysler faces severe competition in the tying product market from several other automobile manufacturers. Thus, in addition to there being no evidence that Chrysler has restrained trade in the tied product market, there is no evidence that Chrysler has such market power over the tying product that Chrysler can actually restrain trade or foreclose competition in the market for the tied product.

### C. *Plaintiffs' Tying Theories*

Plaintiffs seek to redefine the elements of a tying violation, and their submissions are predicated on these theories. Plaintiffs raise the following arguments: (1) market power is not required for a tying claim under Section 3 of the Clayton Act, as distinguished from Section 1 of the Sherman Act; (2) the definition of the market and market power cannot be determined on summary judgment; and (3) Chrysler has market power in a market limited to Chrysler products. The Court rejects plaintiffs' arguments for the reasons set forth below.

#### 1. Requirement of Market Power

██ Plaintiffs concede that market power over the tying product is an essential element of a tying claim under Section 1 of the Sherman Act[23]. However, plaintiffs contend that such market power is not required for a tying claim under Section 3 of the Clayton Act[24]. The Court disagrees.

Plaintiffs argue that, under Section 3 of the Clayton Act, market power is not required for a tying claim and such a claim only requires proof that the tying arrangement affects a substantial volume of commerce in the market for the tied product. In making this argument, plaintiffs principally rely on the following passage from *Times–Picayune Publishing Co. v. United States*, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953):

> "When the seller enjoys a monopolistic position in the market for the tying product, or if a substantial volume of commerce in the tied product is restrained, a tying arrangement violates the narrower standards expressed in § 3 of the Clayton Act...." *Times–Picayune* at 608–609, 73 S.Ct. at 880.

Plaintiffs' reliance on *Times–Picayune* is misplaced. First, Section 3 of the Clayton Act was not at issue in *Times–Picayune;* that case was decided under Section 1 of the Sherman Act. Furthermore, cases subsequent to *Times–Picayune* set forth the same tying analysis whether a claim is brought under Section 1 of the Sherman Act or Section 3 of the Clayton Act. *See, e.g. Summerwood Corp v. CADO Systems*, No. 85–0827 at 5, 1986 WL 3768 (E.D.Pa. March 25, 1986) (Pollak, J.) ("[A]lthough tying arrangements can be challenged either under Sherman 1 or Clayton 3, it is now generally agreed that the elements relating to tying violations of either provision are identical", and market power is a required element under both provisions of the antitrust law). *See Grappone* 858 F.2d at 794; *Mozart Co. v. Mercedes of North America, Inc.*, 833 F.2d 1342, 1352 (9th Cir.1987); *Airweld Inc. v. Airco, Inc.*, 742 F.2d 1184, 1189 n. 2 (9th Cir.1984); *Spartan Grain & Mill Co. v. Ayers*, 581 F.2d 419, 428 (5th Cir.1978), *cert. denied* 444 U.S. 831, 100 S.Ct. 59, 62 L.Ed.2d 39 (1979); *Tominaga v. Shepherd*, 682 F.Supp. 1489, 1493 (C.D.Cal.1988); *Klo–Zik v. General Motors Corp.* 677 F.Supp. 499, 505 (E.D. Tex.1987). *See generally,* 4 E. Kintner, *Federal Antitrust Law,* § 32.57 at 96–97 (1984).

Based on the foregoing, the Court rejects plaintiffs' argument that Section 3 of the

---

**23.** Section 1 of the Sherman Act, 15 U.S.C. § 1, provides in relevant part:

> "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal...."

**24.** Section 3 of the Clayton Act, 15 U.S.C. § 14, provides in relevant part:

> "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities ... where the effect of such lease, sale or contract for sale or such condition agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

Clayton Act does not require proof of the seller's market power to sustain a tying claim.

### 2. Defining the Market

Plaintiffs argue that the determination of the market is a question of fact which cannot be resolved on summary judgment. The Court disagrees.

■■■ A court is not required to submit the determination of the market to the jury. On the contrary, a court may define the product market as a matter of law. *See, e.g. Mogul v. General Motors Corp.,* 391 F.Supp. 1305 (E.D.Pa.1975), *aff'd* 527 F.2d 645 (3rd Cir.1976); *Mary Ann Pensiero, Inc. v. Lingle,* No. 86–0144, slip. op. (M.D.Pa. June 5, 1986), *aff'd* 810 F.2d 1163 (3d Cir.1987). *See also Drs. Steuer & Latham, P.A. v. National Medical Enterprises, Inc.,* 672 F.Supp. 1489, 1504 (D.S.C. 1987).

Furthermore, the cases relied on by plaintiffs, *Joe Westbrook, Inc. v. Chrysler Corp.* 419 F.Supp. 824 (N.D.Ga.1976) and *Wm. Cohen & Son v. All American Hero, Inc.,* 693 F.Supp. 201 (D.N.J.1988), are not contrary authority. Although in each case the court chose not to define the market on summary judgment, the decisions were predicated on the evidence before the court and not, as plaintiffs argue, an opposition to a determination of the market on summary judgment.

■■■ Plaintiffs also argue that the Court should adopt a relevant market limited to Chrysler's products. Although a one-manufacturer market is possible, this is not such as case. First, plaintiffs' tying claim is not analogous to the so-called "franchise cases" in which courts have adopted a one-manufacturer market. *See, e.g. Metrix Warehouse Inc. v. Daimler–Benz Aktiengesellschaft,* 828 F.2d 1033 (4th Cir. 1987), *cert denied,* 486 U.S. 1017, 108 S.Ct. 1753, 100 L.Ed.2d 215 (1988); *Mozart Co. v. Mercedes–Benz of North America, Inc.* 833 F.2d 1342 (9th Cir.1987); *Heatransfer Corp. v. Volkswagenwerk, A.G.* 553 F.2d 964 (5th Cir.1977), *cert denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). In such cases, courts have adopted a one-manufacturer market because of a substantial investment made by consumers which would become worthless if the consumers did not also purchase the tied product. Typically, these cases involve a franchisor requiring a franchisee to purchase an unwanted product after the franchisee has made a substantial investment in the franchise. Based on the franchisee's investment in the franchise (the tying product), courts have found that there is no "reasonable interchangeability" between the tying product and other products and have limited the market to the tying product.

In this case, Chrysler's customers are not at risk of losing any investment if they decide not to purchase Chrysler's automotive sound equipment (the tied product). Even if the Court assumed some Chrysler customers make a mental committment to buying a Chrysler (and only later discover that the automotive sound equipment is standard), the mental committment of the Chrysler customer is not comparable to an investment in a franchise and, as such, does not raise an issue of fact as to a Chrysler-only market.

Plaintiffs' reliance on *Digidyne Corp. v. Data General Corp.* 734 F.2d 1336 (9th Cir.1984), *cert denied,* 473 U.S. 908, 105 S.Ct. 3534, 87 L.Ed.2d 657 (1985) is similarly misplaced. Plaintiffs rely on *Digidyne* for the proposition that market power may be established for a tying violation without reference to a tying product market. Although the court in *Digidyne* found market power without defining the tying product market, *Digidyne* is not persuasive authority. First, the facts of *Digidyne* are readily distinguishable from this case. In *Digidyne*, the tying product, a computer operating system, was not only copyrighted, but buyers of the system had made investments of millions of dollars which would be useless without the system. This case involves neither a copyright nor an investment.

Furthermore, the statement in *Digidyne* that a defined tying product market is not required to sustain a tying claim has been roundly criticized in subsequent decisions. *See, e.g. Allen–Myland,* 693 F.Supp. at 281,

n. 42; *Mozart Co. v. Mercedes–Benz of North America, Inc.* 833 F.2d 1342, 1346, n. 4 (9th Cir.1987); *Will v. Comprehensive Accounting Corp.,* 776 F.2d 665, 6773 n. 4 (7th Cir.1985); *Tominaga v. Shepherd,* 682 F.Supp. 1489, 1495 (C.D.Cal.1988) (Ninth Circuit in *Mozart* "suggested that the *Digidyne* panel erred in failing to engage in market analysis").

Accordingly, the Court rejects plaintiffs' argument that market power may be inferred in a tying claim without reference to a defined tying product market.

### 3. Plaintiffs' Submissions

Plaintiffs offer the Court numerous submissions which are predicated on their tying theories. In many instances, plaintiffs contend that their submissions demonstrate that Chrysler has "market power" over Chrysler automobiles without reference to a defined tying product market or the proper definition of market power. Market power is not, as plaintiffs would have it, another term for the preference that *some* buyers have for the products of a particular seller.

In reviewing plaintiffs' submissions, the relevant issue before the Court is whether there is a genuine issue of material fact as to a market limited to Chrysler products or market power by Chrysler in a properly defined tying product market. The Court finds that plaintiffs have not raised a genuine issue of material fact as to market definition or market power.

### a. *Consumer Polls*

Plaintiffs submit consumer surveys which, according to plaintiffs, demonstrate that Chrysler sells its automotive sound equipment in a "captive market". The surveys do not support plaintiffs' con-

clusion. At most, the surveys demonstrate that some Chrysler customers decide to buy a Chrysler vehicle before considering the type of automotive sound equipment they want.[25] The surveys do not demonstrate that Chrysler's customers commit to buying a Chrysler, even before they discover the options and prices of a Chrysler. The possibility that some Chrysler customers may tentatively select a Chrysler vehicle before focusing on the type of automotive sound equipment does not mean that they are committed to purchasing the Chrysler vehicle, if, when they eventually focus on the automotive sound equipment, they find it unsatisfactory.[26]

Plaintiffs' surveys do not address the relevant considerations of market definition or market power. Accordingly, the Court finds that plaintiffs' surveys do not raise an issue of fact as to a Chrysler-only market or market power by Chrysler in a properly defined tying product market.

### b. *Market Research Studies*

Plaintiffs submit market research which compare the buying behaviors of Chrysler's customers to the buying behaviors of customers of other automobile manufacturers.[27] Plaintiffs suggest that these studies demonstrate Chrysler has a unique control over its customers. However, the studies do not support plaintiffs' conclusory allegations. In fact, the studies submitted by plaintiffs support Chrysler's contention that Chrysler competes against other automobile manufacturers. The studies show that Chrysler's potential customers will freely substitute another automobile make for a Chrysler automobile if a desired type of Chrysler vehicle is not readily avail-

---

**25.** Exhibit B attached to Plaintiffs' Response to Defendant's Reply Memorandum in Support of its Motion for Summary Judgment. One of the survey questions relied on by plaintiffs appears as follows:

"Q.17 Items you decided you first wanted: First decided on make and model [before] Type of sound equipment: Chrysler 42.3 percent."

In the best light for plaintiffs, the question may be read as 42.3 percent of Chrysler's consumers decide on a Chrysler vehicle before considering the type of automotive sound equip-

ment they wanted. The survey question addresses the order of purchase, not whether Chrysler customers will buy a Chrysler vehicle, even if the options and price of the options are undesirable.

**26.** *Id.*

**27.** *See* Exhibits Submitted by Plaintiffs in Opposition to Chrysler's Motion for Summary Judgment; *see, e.g.* Report of Booz, Allen & Hamilton, Inc. (September 19, 1983) (Exhibit B).

able[28] or if they are dissatisfied with Chrysler's options.[29]

Based on the foregoing, the Court finds that the market research studies submitted by plaintiffs do not raise an issue of fact as to a Chrysler-only market or market power by Chrysler in a properly defined tying product market.

### c. *Testimony of Chrysler Personnel*

Plaintiffs argue that the testimony of Chrysler personnel support a Chrysler-only market.[30] Plaintiffs contend that Chrysler personnel have stated Chrysler competes in a "market" consisting of Chrysler products. In ordinary speech, the term "market" is used in many different ways. However, the definition of the product market is a term of art. As set forth above, the product market includes all "reasonably interchangeable" products from actual and potential sources of supply. *See, e.g. SmithKline; Allen–Myland.* Accordingly, the testimony of Chrysler's personnel is not relevant to defining a product market.

### d. *Affidavit of F. Gerard Adams*

Plaintiffs offer the affidavit of F. Gerard Adams, Professor of Economics at the University of Pennsylvania, as support for their tying claim. Dr. Adams states that Chrysler has market power in a market limited to the installation of automotive sound equipment in new Chryslers.[31] Although Dr. Adams' statement is correct, it is of no assistance to plaintiffs. It is a given that Chrysler has complete control in a market in which Chrysler is the only seller.

Dr. Adams states that his opinion is predicated on plaintiffs' submissions—*i.e.* the market research studies, consumer surveys, and testimony of Chrysler personnel. Dr. Adams does not offer an independent basis for his opinion. Since the Court has found that none of plaintiffs' submissions raise an issue of fact as to a Chrysler-only market or market power by Chrysler in a

properly defined tying product, the Court, likewise, finds that Dr. Adams' affidavit (which is predicated on these same submissions) does not raise an issue of fact as to market definition or market power. *See, e.g., Mid–State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333 (7th Cir. 1989) (expert opinion which does not establish an issue of fact does not defeat a motion for summary judgment); *Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823, 829–832 (D.C.Cir.1988) (expert's declaration, full of assertions but empty of facts and reasons, is insufficient to get a case past a motion for summary judgment).

On a motion for summary judgment, the party seeking to avert summary judgment has to set forth specific facts showing that there is a genuine issue for trial. *See, e.g. Celotex Corp. v. Catrett*, 477 U.S. at 322–323, 106 S.Ct. at 2552–53. For the reasons set forth above, the Court finds that plaintiffs have not raised any genuine issues of material fact in support of their claim of a tying violation by Chrysler. Accordingly, the Court will grant Defendant's Motion for Summary Judgment.

---

**28.** *Id.* at 192–193.

**29.** *Id.* at 362.

**30.** *See, e.g.* Dep. of Jack W. Apple, Jr. at 52–54; Dep. of Robert Gonzalez, at 92–94; Dep. of John Mattioli, at 54–55.

**31.** Declaration in Further Opposition to Chrysler's Motion for Summary Judgment (F. Gerard Adams).