KLO–ZIK CO. & Texas–Continental Express, Inc., Moore Brothers, Suco, R.L. Moore, Michael J. Moore, Charlotte Moore and Rocky M. Moore

v.

GENERAL MOTORS CORP., d/b/a Detroit Diesel Allison; Lone Star Peterbilt Truck Sales, Inc.; Stewart & Stevenson Services, Inc.

v.

PACCAR, INC., Third Party Defendant.

Civ. A. No. P–75–45–CA.

United States District Court,
E.D. Texas,
Paris Division.

Dec. 30, 1987.

Jim D. Lovett, Lovett & Rodgers, Paris, Tex., for plaintiffs.

Robert W. Jordan, Baker & Botts, Dallas, Tex., and J.D. McLaughlin, McLaughlin, Hutchison & Hunt, Paris, Tex., for Stewart & Stevenson Services, Inc.

Robert F. Ruckman, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for Lone Star Peterbilt.

Barbara Lynn, Tyler Baker and Corbett F. Bryant, Jr., Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., and Hardy Moore, Paris, Tex., for General Motors Corp.

Jim Cowles and Brent Cooper, Cowles & Thompson, Dallas, Tex., for Paccar, Inc.

## MEMORANDUM OPINION

PAUL N. BROWN, District Judge.

### Introduction

In this action, originally filed in 1975, plaintiffs allege antitrust violations, as well as a host of state law claims, against defendants General Motors Corporation ("GMC"), Lone Star Peterbilt Truck Sales, Inc. ("Lone Star") and Stewart & Stevenson Services, Inc. ("S & S"). Plaintiffs' claims originate from the purchase and repair of certain tractor-trailer trucks. These trucks were purchased from Lone Star in 1974, contained Detroit Diesel Allison ("DDA") 350 T engines manufactured by GMC and were serviced by S & S.

Plaintiffs allege that the trucks did not operate properly and were never repaired, necessitating the instant suit. In 1977, defendants moved for partial summary judgment as to certain of plaintiffs' claims. The ruling on these motions was stayed so that discovery could be pursued. Further delay was created when plaintiffs' attorney

had his office destroyed in a fire. In April of 1986, defendants reasserted their motions for partial summary judgment. This opinion is a resolution of these motions.

## I. Summary Judgment Standard

The granting of summary judgment is proper if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is no actual dispute as to any material fact in the case. This burden does not require the moving party to produce evidence showing the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party satisfies its burden by "pointing out to the District Court ... that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party has satisfied its burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the nonmovant fails to set forth specific facts in support of allegations essential to that party's claim and on which that party will bear the burden of proof, then summary judgment is appropriate. *Celotex,* 106 S.Ct. at 2552–53. Even if the nonmovant brings forth evidence in support of its allegations, the summary judgment will be appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted).

While in the past summary procedures regarding complex antitrust issues have been used sparingly, recent Supreme Court decisions have made it clear that summary judgment is appropriate in antitrust suits where the plaintiff fails to establish genuine issues of material fact bearing on the elements of the case. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. Antitrust Claims

### A. Tying Arrangement

■ Plaintiffs have alleged a variety of antitrust violations to have been committed by defendants. One of plaintiffs' claims is that the sale of truck engines with warranties covering those engines constituted an illegal tying arrangement.[1]

■ A tying arrangement is an agreement by a party to sell one product (the tying product) but only on the condition that the buyer also purchase a different (or tied) product. *Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). As the Supreme Court has recently stated:

> [T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms.

*Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 1558, 80 L.Ed.2d 2 (1984). Arrangements of this type pose an unacceptable risk of hurting competition in the tied product market and are unreasonable "per se". *Id.,* 104 S.Ct. at 1556. While there is some confusion

---

1. Plaintiffs' claims are based on Section 1 of the Sherman Act, 15 U.S.C. § 1 (1982), and Section 3 of the Clayton Act, 15 U.S.C. § 14 (1982). The two theories of liability are substantively synonymous. *Bob Maxfield, Inc. v. American Motors Corp.,* 637 F.2d 1033, 1037 (5th Cir.), *cert denied,* 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981); L. Sullivan, Handbook of the Law of Antitrust § 153 (1977). The Court recognizes that § 3 of the Clayton Act applies only when

both the tying and tied products are commodities. *Crossland v. Canteen Corp.,* 711 F.2d 714, 718 n. 1 (5th Cir.1983); *Advanced Business Systems & Supply Co. v. SCM Corp.,* 415 F.2d 55, 64 (4th Cir.1969), *cert. denied,* 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970). However, due to the Court's disposition of plaintiffs' tying claim, the argument by defendants that the warranty is not a commodity need not be reached.

regarding the elements of a per se tying violation [2], there is no question that a plaintiff must establish the existence of: 1) two separate products, the tying product and the tied product; 2) sufficient market power in the tying market to coerce the purchase of the tied product; and 3) involvement of a not insubstantial amount of interstate commerce in the tied market. *Id.* at 1560–61. The Fifth Circuit has further required that a plaintiff show his purchase of the tied product resulted from actual coercion based on the defendant's economic power in the tying product market.[3] *Crossland,* 711 F.2d at 723; *Bob Maxfield, Inc.,* 637 F.2d at 1037; *Response of Carolina, Inc. v. Leasco Response, Inc.,* 537 F.2d 1307, 1327 (5th Cir.1976). Defendants have challenged plaintiffs' evidence on each of these elements.

1. Two Products

Plaintiffs contend that defendants have employed an illegal tying arrangement by tying the sale of a warranty to the sale of truck engines.[4] Defendants assert that the truck engines and the warranties that cover the engines are actually one product. Therefore, defendants contend, plaintiffs are unable to establish a per se tying arrangement.

In *Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984) the Supreme Court held that the defendant hospital's practice of requiring patients to use the hospital's own anesthesiologists was not an illegal tying arrangement. The Court did, however, find that the hospital services and the anesthesiological service were separate services. *Id.* 104 S.Ct. at 1564. In reaching the conclusion that two separate services were involved, the Court revealed that "whether one or two products are involved turns not on the functional relation between them, but rather on the character of the demand for the two items." *Id.* at 1562.

The Court explained that the underlying rationale for the rule prohibiting tying arrangements is to prevent foreclosure of competition on the merits in the tied product market. *Id.* at 1563. Therefore, there can be no tying arrangement unless two distinct product markets have been linked. *Id.* Thus:

> The answer to the question whether petitioners have utilized a tying arrangement must be based on whether there is a possibility that the economic effect of the arrangement is that condemned by the rule against tying—that petitioners have foreclosed competition on the merits in a product market distinct from the market for the tying item. [footnote omitted]

---

**2.** The confusion stems from cases requiring that the plaintiff prove the existence of anticompetitive effects in the tied market. *Crossland,* 711 F.2d at 722; *Bob Maxfield, Inc.,* 637 F.2d at 1037; *Driskill v. Dallas Cowboys Football Club, Inc.,* 498 F.2d 321, 323 (5th Cir.1974). This requirement has been listed in addition to the showing of an involvement of a "not insubstantial amount of interstate commerce." *Id.* However, examination of the Supreme Court's opinion in *Hyde,* 104 S.Ct. at 1551 shows that there is no element requiring proof of anticompetitive effects in the tied product market separate from a showing of an involvement of a "not insubstantial amount of commerce." The Court explained that use of the per se analysis is appropriate if there is a substantial potential for impact on competition in the tied product market. *Id.* at 1560. This threshhold requirement could be satisfied by demonstrating an involvement of a not insubstantial amount of interstate commerce. *Id.* However, because plaintiffs have failed to establish other elements of their case, there is no need to resolve the parties' arguments on this point.

**3.** Even though the Supreme Court in *Hyde* discussed coercion only in terms of the manifestation of market power, *Hyde* 104 S.Ct. at 1558–59, the requirement of the Fifth Circuit that there be proof of actual coercion is not inconsistent with the Supreme Court's discussion. The Supreme Court noted that the evil of a tying arrangement comes from the seller forcing the buyer to purchase a product that he did not want or would have preferred to purchase elsewhere. *Id.* at 1558. The requirement by the Fifth Circuit simply refuses to presume a buyer was coerced by the seller's market power. *See Response of Carolina, Inc.,* 537 F.2d at 1327.

**4.** Plaintiffs contend that the DDA 350T truck engines are the tying product while the warranty on those engines are the tied product. Plaintiffs complaint also made reference to repair services and parts as the tied product. However, this contention appears to have been abandoned.

Thus ... no tying arrangement can exist unless there is a sufficient demand for the purchase of [the tied product] separate from [the tying product] to identify a distinct product market in which it is efficient to offer [the tied product] separately from [the tying product]. [footnote omitted]

*Id.*

The question in the present situation is whether there is sufficient demand from buyers to purchase a warranty on a DDA engine separately from the purchase of a DDA engine. The sufficiency of the demand must be such that it would be efficient to offer a warranty on a DDA engine separate and without relation to the sale of a DDA engine.[5]

When the present situation is examined in light of the test set out, it becomes apparent that plaintiffs' evidence cannot withstand a motion for summary judgment. Plaintiffs state that because the buying public demands warranties on the truck engines which are purchased, it is economic common sense that there is room for competition. Further, plaintiffs point to the fact that defendant S & S provided plaintiffs an "Extended Service Policy" to support the proposition that a warranty can be provided by one other than the engine's manufacturer. Also, plaintiffs contend that because a portion of the purchase price of a DDA engine is allocated to the cost that will arise from the warranty, the warranty must be a separate product.

The evidence pointed to by plaintiffs does not raise a fact issue concerning the existence of two separate products. Plaintiffs have failed to point to any evidence which shows that there is sufficient demand for the purchase of a truck engine warranty from someone other than the manufacturer of the engine. Further, plaintiffs have failed to point out any evidence showing that it would be efficient for truck engine warranties to be provided separate from the engines themselves.

Therefore, plaintiffs have failed to provide any evidence that two distinct product markets have been linked. In the absence of evidence showing two distinct product markets, the rationale behind the tying rule—foreclosure of competition in a distinct product market—there can be no illegal tie.

### 2. Market Power

Even if the warranty on a DDA engine were found to be a separate product from the DDA truck engine, plaintiffs would have to establish that defendants have market power in the tying product market as an element of a per se tying violation. *Hyde*, 104 S.Ct. at 1559; *United States Steel Corp. v. Fortner Enterprises*, 429 U.S. 610, 97 S.Ct. 861, 867–68, 51 L.Ed.2d 80 (1977) (*Fortner II*). In *Hyde* the Court pointed out that the per se rule prohibiting tying arrangements "is appropriate if anticompetitive forcing is likely." *Hyde*, 104 S.Ct. at 1560. The situations where the Supreme Court has found anticompetitive forcing likely include situations where the seller's source of market power is derived from patents, high market share, or offering a unique product which competitors are unable to offer. *Id.* at 1560–61.

Plaintiffs have asserted that defendants had the requisite market power in the tying product because of market dominance, product uniqueness and the existence of patents.

Plaintiffs' arguments that GMC had the required market power because of market dominance and patents on the engine simply state that the DDA 350T engine was sufficiently unique to give GMC market power. Plaintiffs did not seek to prove that GMC had a high market share in a relevant market. Rather, plaintiffs concentrated on the buyer appeal of the engine and its availability to the plaintiffs.

---

**5.** It should be remembered that whether two separate products exist does not depend on the functional relation of the products. Therefore, the question is not whether there is demand to purchase an engine warranty if no engine is in fact purchased. Instead, the focus is whether, when the engine is purchased, there is sufficient demand to purchase the warranty from someone other than the seller of the engine.

■ The unique character of the tying product has been used to support a finding of market power. *See Fortner II,* 97 S.Ct. at 867. However, uniqueness of a product is probative on the issue of market power only if the uniqueness gives the seller some advantage not shared by his competitors. *Id.* at 868. As the Supreme Court stated:

> Uniqueness confers economic power only when other competitors are in some way prevented from offering the distinctive product themselves. Such barriers may be legal, as in the case of patented and copyrighted products, [*International Salt Co. v. United States,* 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947)], or physical, as when the product is land, [*Northern Pacific R. Co. v. United States,* 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958)]. It is true that the barriers may also be economic, as when competitors are simply unable to produce the distinctive product profitably, but the uniqueness test in such situations is somewhat confusing since the real source of economic power is not the product itself but rather the seller's cost advantage in producing it.

*Fortner Enterprises, Inc. v. United States Steel Corp.,* 394 U.S. 495, 89 S.Ct. 1252, 1259 n. 2, 22 L.Ed.2d 495 (1969) (Fortner I).[6]

In the present case plaintiffs have failed to point to any evidence which would show that GMC had a cost advantage over its competitors. Further, plaintiffs have failed to point to any evidence that would show that the DDA 350T was significantly differentiated from other engines in the market. The fact that plaintiffs considered the engines as the only engines available at the time does not support the argument that GMC had market power in the engine market.[7]

Therefore, plaintiffs' argument that the defendants had market power must revolve around the existence of patents on the engine. The fact that a product is patented is usually enough to create a presumption of market power. *See United States v. Loew's, Inc.,* 371 U.S. 38, 83 S.Ct. 97, 102–103, 9 L.Ed.2d 1 (1962). However, "[t]he fact that an article is patented does not affect the question of whether other products are reasonably interchangeable." *J.T. Gibbons, Inc. v. Crawford Fitting, Co.,* 704 F.2d 787, 796 (5th Cir.1983); *see also Hyde* 104 S.Ct. at 1571 n. 7 (O'Connor, J., concurring in judgment) ("A common misconception has been that a patent ... suffices to demonstrate market power.")

Plaintiffs have made vague references to patents which GMC holds on the DDA 350T. However, plaintiffs have failed to offer any evidence on the importance of these patents on the issue of market power. Plaintiffs have failed to show the extent of the patents or the effect they have on the product's interchangeability.

Therefore, plaintiffs have failed to establish the requisite market power which makes tying arrangements illegal per se. Without market power in the tying product market, the type of forcing that the per se rule forbids is not probable.

### 3. Coercion

Even if plaintiffs satisfied all other elements of a per se tying violation, this claim would fail because plaintiffs have failed to demonstrate actual coercion. The Fifth Circuit has stated that "it is not enough to show that the seller has sufficient economic power and that two products were purchased together. In addition, it must be shown that the purchaser was coerced into purchasing an unwanted product ..." *Response of Carolina, Inc. v. Leasco Response, Inc.,* 537 F.2d 1307 (1976); *see also*

---

**6.** This passage was quoted with approval in *Fortner II* where the court held that market power of the seller had not been proved. *Fortner II,* 97 S.Ct. at 869. The court stated that the plaintiff failed to show that the defendant seller had a cost advantage over its competitors, or that the defendant seller had a tying product that was significantly differentiated from what

other sellers could offer if they chose to do so. *Id.* at 869.

**7.** The evidence indicated that the DDA 350T was not plaintiffs' first choice. Yet, it is evident that for market power to exist, the seller must have power over an appreciable number of buyers, not just a small part of the potential buying group. *Fortner I,* 89 S.Ct. at 1259.

*Crossland v. Canteen Corp.*, 711 F.2d 714, 723 (1983) ("a tie must result from actual coercion based on economic power ..."). If two products are sold together, there must be evidence that the buyer objected to the package, that the buyer was only interested in one of the two products, or that the tied product was forced upon him. *Response of Carolina, Inc.*, 537 F.2d at 1327–28 (citing *Capital Temporaries, Inc. v. Olsten Corp.*, 506 F.2d 658 (2nd Cir.1974)).

In the present case, plaintiffs failed to show any evidence on the issue of actual coercion. In fact, defendants pointed to evidence which showed that plaintiffs considered a warranty as a valuable part of the purchase. Further, plaintiffs did not consider purchasing the trucks without engine warranties and did not ask if they could do so. Therefore, an essential element of a tying claim is not present and summary judgment is proper.

### 4. Unreasonable Restraint

In the absence of per se liability, the plaintiffs could only prevail if it is shown that the arrangement complained of unreasonably restrained competition. *Hyde*, 104 S.Ct. at 1567. The proper way in which to prove an unreasonable restraint is by offering evidence showing an anticompetitive effect in the market. However, plaintiff has failed to point to any evidence showing anticompetitive effects. Therefore, plaintiffs' tying claim must fail.

### B. Sherman Section 2

▉ Plaintiffs have alleged that defendant GMC has monopolized, attempted to monopolize, or conspired to monopolize with the remaining defendants.

▉ A monopoly charge under section 2 of the Sherman Act has two elements: "(1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966). Attempted monopolization also has two elements: (1) that the defendant had specific intent to accomplish an illegal result, and (2) there was a dangerous probability of success. *Transource International, Inc. v. Trinity Industries, Inc.*, 725 F.2d 274, 282 (5th Cir.1984). A dangerous probability of success refers to a dangerous probability of monopolizing a relevant market. *Dimmitt Agri Industries v. CPC International, Inc.*, 679 F.2d 516, 525 (5th Cir.1982), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983).

▉ It is imperative in a discussion of monopoly power that a relevant market be established in order to determine the existence of that power.[8] A section 2 plaintiff attempting to prove either monopolization or attempted monopolization must provide sufficient evidence to permit a definition of the relevant geographic and product market. *Dimmitt Agri Industries, Inc.*, 679 F.2d at 525. Plaintiffs in the present case have failed to point to any evidence from which a relevant geographic and product market could be established. Therefore, plaintiffs' section 2 claims must fail.

Also, even if plaintiffs had provided enough evidence for a market definition, they have failed to point to any evidence showing market power in any market.[9]

---

**8.** Plaintiffs assert that GMC holds a monopoly over the GMC warranty for the DDA 350T engine. However, this assertion is legally deficient because "every manufacturer has a natural monopoly in the sale of his own products ..." *Parsons v. Ford Motor Co.*, 669 F.2d 308, 312 (5th Cir.), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); *see also Transource International, Inc.*, 725 F.2d at 283. Therefore, even if the warranty were considered a product in which there could be a monopoly, rather than a marketing tool inseparable from the engine, *see Domed Stadium Hotel, Inc. v. Holiday*

*Inns. Inc.*, 732 F.2d 480, 489 (5th Cir.1984), there could be no illegal monopoly.

**9.** Plaintiffs have made vague references to unspecified patents that GMC has on the DDA 350T engines. However, without more evidence on the issue, "[t]he fact that an article is patented does not affect the question of whether other products are reasonably interchangeable." *J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 704 F.2d 787, 796 (5th Cir.1983). Therefore, the fact that a part of a product is patented, without more, cannot establish monopoly power.

The failure to point to evidence on this issue supports summary judgment for defendants.

All other antitrust claims asserted by plaintiffs have been abandoned and are unsupported by any evidence. Therefore summary judgment is proper as to all remaining antitrust claims.

## III. State Law Claims

Due to the significant length of time that this case has been pending, it is the opinion of this Court that jurisdiction of the plaintiffs' state law claims should be retained.

### A. Strict Liability

■■■ Plaintiffs have asserted a cause of action under the Restatement (Second) of Torts § 402A as adopted by the State of Texas. *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967). Defendants argue that plaintiffs' only damages are economic loss and damage to the product itself and are not recoverable under section 402A.

In *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 80 (Tex.1977) the Texas Supreme Court held that solely economic loss may not be recovered under section 402A. The court adopted the following definition of economic loss:

> ... [D]irect economic loss may be "out of pocket"—the difference in value between what is given and received—or "loss of bargain"—the difference between the value of what is received and its value as represented. Direct economic loss also may be measured by costs of replacement and repair. Consequential economic loss includes all indirect loss, such as loss of profits resulting from inability to make use of the defective product.

*Id.* at 78 n. 1, (quoting Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. 917, 918 (1966)). In *Mid-Continent Aircraft Corp. v. Curry County Spraying Services, Inc.*, 572 S.W.2d 308 (Tex.1978) the Texas Supreme Court held that a defect in a product which causes harm to the product itself is not recoverable under section 402A. The court reasoned that unless there is physical injury to persons or property other than the product, the loss is economic and not recoverable under 402A. *Id.* at 313.

*Signal Oil and Gas Co. v. Universal Oil Products*, 572 S.W.2d 320 (Tex.1978) was decided the same day as *Mid-Continent Aircraft*. The Texas Supreme Court explained in *Signal Oil* that if the product and other property are damaged due to a defective product, the entire loss may be recovered under section 402A. *Signal Oil*, 572 S.W.2d at 325.

Considering the foregoing decisions, it is evident that the defendants' motion for summary judgment on plaintiffs' strict liability theory should be granted. Plaintiffs' allegations of damages include physical damage to the product itself which may not be recovered under section 402A. *Mid Continent Aircraft*, 572 S.W.2d at 308. Plaintiffs also seek lost profit due to engine breakdown which is not recoverable under section 402A. *Nobility Homes*, 557 S.W.2d at 80. In short, plaintiffs' only allegations of physical harm to anything other than the engine itself, is the allegation of damage to the Peterbilt trucks. However, plaintiffs have pointed to no evidence which would create a fact issue on this question.

### B. Implied Warranty

Defendants have also moved for summary judgment concerning plaintiffs' implied warranty claims. GMC and Lone Star assert that they have effectively disclaimed all implied warranties. S & S asserts that it is not a seller, therefore, could not have given an implied warranty concerning the trucks. Plaintiffs assert that GMC's and Lone Star's disclaimers were not conspicuous, but has failed to respond to the assertions of S & S. Plaintiffs also assert that the disclaimers conflict with the express warranties given and that the warranties were not seen by the plaintiff until after delivery of the trucks.

■■■ Tex.Bus. & Com.Code Ann. § 2.314(a) (Vernon 1968) states in part, "unless excluded or modified (§ 2.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to

goods of that kind." Similarly, section 2.315 states in part, "where the seller at the time of contracting...." "Seller" is defined at section 2.103(a)(4) as, "a person who sells or contracts to sell goods." It is apparent that S & S does not qualify as a seller with regard to the trucks and may not be held on an implied warranty theory in that respect.

Lone Star and GMC, on the other hand, were sellers, and the implied warranty of merchantability, and fitness if appropriate, apply to the sale of the trucks unless they were properly disclaimed. The implied warranty of merchantability may be disclaimed if the disclaimer mentions merchantability and in the case of a writing, is conspicuous. *Id.* at § 2.316(b). The implied warranty of fitness for a particular purpose may be disclaimed by a conspicuous writing. *Id.* Conspicuousness is defined as,

> "a term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals ... is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color ... whether a term or clause is 'conspicuous' or not is for a decision by the court."

*Id.* at § 1.201(10). The comments to the section make clear that "the test is whether attention can reasonably expected to be called to it." *Id.* at Comment 10.

■■■ In the present case, it is obvious that the Lone Star implied warranty disclaimer meets the definition of conspicuousness. The disclaimer is in bold face type, all capitals, and on the face of the warranty right above the buyer's signature. Further, the disclaimer mentions the warranty of merchantability and fitness for a particular purpose as required by the statute. However, a fact question remains as to whether the disclaimer was effective. In order for the disclaimer to be effective, the plaintiffs must have had an opportunity to examine it prior to consummation of the contract for sale. *See Mercedes Benz of North America, Inc. v. Dickenson,* 720

S.W.2d 844, 852 (Tex.App.—Ft. Worth 1986, no writ); *Willoughby v. Ciba–Geigy Corp.,* 601 S.W.2d 385, 388 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.). Also, section 2.316(a) states that words or conduct creating an express warranty and words or conduct negating or eliminating that warranty should be construed consistently. However, if this is not possible the negation or limitation will be deemed inoperative. *See Bowen v. Young,* 507 S.W.2d 600 (Tex.Civ.App.—El Paso 1974, no writ).

In the present case, plaintiff has produced evidence that the purchaser, R.L. Moore, did not see the warranties until after delivery of the trucks. Further, R.L. Moore testified in deposition as to certain statements made by defendants which may operate as an express warranty and may be inconsistent with the disclaimer.

■■■ With regard to the GMC warranty, the Court finds that the disclaimer is not conspicuous. It appears that the disclaimer is contained on the back of a piece of paper entitled "Policy On Owner's Service". The disclaimer is at the end of the warranty schedule and is not in bold or capital lettering. The only distinguishing factor is that the disclaimer is italicized. However, the distinction is minimal when viewing the warranty as a whole. The Court cannot find that a buyer's attention would reasonably be expected to be called to this disclaimer.

Therefore, the implied warranty disclaimer of Lone Star is conspicuous, however, fact issues remain as to whether or not the disclaimer was effective. The implied warranty disclaimer of GMC is not conspicuous and therefore is inoperative.

**C. Deceptive Trade Practices Act**

■■■ Plaintiffs have alleged a cause of action based on the Texas Deceptive Trade Practices Act ("DTPA") Tex.Bus. & Com. Code Ann. §§ 17.41–17.62 (Vernon Supp. 1987). In order to maintain a cause of action under the DTPA, a party must be a "consumer" as defined in section 17.45(4) of the Act. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 538 (Tex.1981). The definition in section 17.45(4) has changed several times and it is important

to determine which version applies to a given factual setting. The date of the alleged deceptive acts is the date which determines what version of the DTPA applies. *Woods v. Littleton*, 554 S.W.2d 662, 666 (Tex.1977). Defendants assert that the partnership, Klo–Zik, is the only plaintiff which may qualify as a consumer. However, the defendants argue that Klo–Zik could not qualify as a consumer because all of the acts complained of occurred prior to the September 1, 1975, amendment to section 17.45(4) which first included partnerships as consumers.

As of May 21, 1973, the effective date of the DTPA, section 17.45(4) defined a "consumer" as "an individual who seeks or acquires by purchase or lease, any goods to services." However, effective September 1, 1975, the definition was expanded to "individual, partnership or corporation who seeks or acquires by purchase or lease, any goods or services."

In the present case, there are individual plaintiffs as well as business plaintiffs. The individual plaintiffs may be able to qualify as a "consumer" under the DTPA. Further, Klo–Zik could be a "consumer" as to deceptive acts occurring after September 1, 1975.[10] The Court is unable to find that no issue of material fact exists as to the plaintiffs' DTPA claims.

*Conclusion*

There is no issue of material fact concerning plaintiffs' antitrust claims and summary judgment is proper as to all defendants. Also, the plaintiffs' strict liability claims are properly dismissed as to all defendants. Further, the Court finds that the implied warranty disclaimer of Lone Star is conspicuous as a matter of law. The Court finds that the warranty disclaimer of GMC is not conspicuous. Genuine

issues of material fact exist as to plaintiffs' remaining claims. Therefore, the motions for partial summary judgment of GMC, Lone Star and S & S Services are granted in part and denied in part. An Order has been signed separately and simultaneously of even date herewith.

---

**10.** Plaintiffs have raised a factual question as to the existence and breach of several warranties. Defendants argue that any breach of warranty occurs at the time of sale. *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544 (Tex.1986). However, the *Safeway* case held that while implied warranties are breached at the time of sale, express warranties which extend to future performance are not breached until there is defective future performance. *Id.* at 548. The

express warranty provided by defendants covered the trucks for 24 months following the sale. The breach of an express warranty is actionable through the DTPA. Tex.Bus. & Com.Code Ann. § 17.50(a)(2) (Vernon Supp.1987). The defendants have failed to bear their initial responsibility under Fed.R.Civ.P. 56 on this issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).