**ROCKBIT INDUSTRIES U.S.A., INC., Plaintiff,**

v.

**BAKER HUGHES, INC. and Hughes Tool Company, Defendants.**

Civ. A. No. H–89–3802.

United States District Court, S.D. Texas, Houston Division.

June 24, 1991.

---

Michael D. Mosher Law Offices, Paris, Tex., for plaintiff.

Morton L. Susman, Houston, Tex., John B. Lay, McLean, Sanders, Price, Head & Ellis, Ft. Worth, Tex., for defendants.

## ORDER

HITTNER, District Judge.

Pending before the Court is the Rule 12(b)(6) motion to dismiss (Document # 7) filed by defendants Baker Hughes, Inc. and Hughes Tool Company (Baker Hughes). Having considered that motion, the submissions of the parties, the arguments of counsel, and the applicable law, the Court is of the opinion that Baker Hughes' motion should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Rockbit Industries U.S.A., Inc. (Rockbit) and Baker Hughes produce equipment for the oil drilling industry. In 1982 Rockbit and Hughes Tool Company were involved in an action in the United States District Court for the Northern District of Texas in *Hughes Tool Company v. Rockbit Industries U.S.A., Inc.*, Civil Action No. CA 4–82–152K, a patent litigation concerning drill bits. This suit was settled by agreement of the parties. Rockbit agreed to a consent judgment and a license agreement whereby Rockbit was permitted to manufacture the infringing drill bits under the terms of the license agreement and a payment formula for royalties due to Hughes Tool Company.

The payments were not made when due under the terms of the license agreement and prior to the filing of this action by Rockbit, Hughes Tool Company filed a suit styled *Hughes Tool Company v. Rockbit Industries U.S.A., Inc.* in the 236th Judicial District Court of Tarrant County, Texas, Cause No. 236–120470–89 (the state action), complaining that Rockbit had breached the license agreement. The patent issues raised in Count Four of this case were raised by Rockbit in that case. The record reflects that Hughes Tool Company has successfully prosecuted the state action to a jury verdict, and a final judgment was entered in the state action in favor of Hughes Tool Company against Rockbit for $3,005,806.00 on August 23, 1990.

On November 7, 1989 Rockbit filed its complaint (Document # 1) in the instant action, alleging that Baker Hughes had engaged in activities prohibited by Sections 1 and 2 of the Sherman Act. One week later Rockbit filed its first amended complaint (Document # 2) in this action. In December 1989 Baker Hughes filed a motion to dismiss the first amended complaint (Document # 7) under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rockbit responded on May 21, 1990 by filing a

motion for leave to file a second amended complaint, a proposed second amended complaint (Document # 21), and a memorandum of law in opposition to Defendants' motion to dismiss (Document # 23 filed May 24, 1990). By stipulation (Document # 24) the parties agreed that (i) Baker Hughes would not oppose the filing of Rockbit's second amended complaint; (ii) as of the filing of the second amended complaint, the first amended complaint would be deemed withdrawn; (iii) Baker Hughes' motion to dismiss filed as to the first amended complaint would be deemed filed as to the second amended complaint; and (iv) Baker Hughes would be given an opportunity to file a reply in response to Rockbit's memorandum of law in opposition to Defendants' motion to dismiss.

Therefore, Baker Hughes' motion to dismiss (document # 7) which is currently before the Court seeks to dismiss for failure to state a claim Rockbit's second amended complaint (Document # 27). In that complaint, Rockbit alleges that Baker Hughes: (1) violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by price fixing; in essence, entering into an agreement with Reed Tool Company (Reed) to eliminate discounts in the sale of drill bits; [1] (2) violated Section 1 of the Sherman Act through a tying arrangement under which it would not provide horizontal drilling technology to customers unless they also purchased Baker Hughes' drill bits; and (3) violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by (a) monopolizing, (b) attempting to monopolize, (c) or jointly monopolized an alleged market for premium tungsten carbide drill bits through predatory pricing, tying, and sham litigation.

## ANALYSIS

### A. *Standard of evaluation*

▆ Rule 12(b)(6) provides that a complaint should be dismissed if that claim fails to state a claim upon which relief can be granted. Dismissal of a complaint is

warranted when the plaintiff has failed to plead the necessary elements of the offenses claimed and thus could not prevail even if it could adduce evidence to support each such allegation. *See Elliott v. Foufas*, 867 F.2d 877 (5th Cir.1989); *see also In re Plywood Antitrust Litig.*, 655 F.2d 627 (5th Cir.1981), *cert. dismissed*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983). While [a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations[,] *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)), mere conclusory recitation of the elements of the claims alleged is insufficient to forestall dismissal; a plaintiff must plead each element of its claims with specificity. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Dismissal is also appropriate if the plaintiff cannot establish standing to bring a claim. *Dickens v. Lewis*, 750 F.2d 1251 (5th Cir.1984).

### B. *Section 1—Price Fixing*

Rockbit's first claim is that Baker Hughes and Reed conspired in violation of Section 1 to raise prices for tungsten carbide drill bits by agreeing to discontinue discounts to customers. The alleged agreement purportedly led to higher prices on sales of these drill bits by Baker Hughes and Reed than would have prevailed absent the alleged conspiracy. Even if such an agreement, if proved, could violate Section 1 of the Sherman Act, Rockbit lacks standing to advance a claim of price fixing based on this alleged conspiracy.

▆ Section 4 of the Clayton Act limits the right to bring a private antitrust action for treble damages to any person who shall be injured in his business or property by

---

**1.** Rockbit also alleges that Baker Hughes violated Section 1 by engaging in predatory pricing and sham litigation. As unilateral conduct, these activities are not prohibited by Section 1,

violation of which requires the existence of a contract, combination ... or conspiracy. *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984).

reason of anything forbidden in the antitrust laws. 15 U.S.C. § 15. A similar standard applies to suits for injunctions brought under Section 16 of the Clayton Act. *See Cargill v. Monfort of Colorado, Inc.,* 479 U.S. 104, 113, 107 S.Ct. 484, 491, 93 L.Ed.2d 427 (1986). To have standing, a plaintiff must demonstrate that it suffered antitrust injury, *i.e.,* injury of the type the antitrust laws were designed to prevent and that flows from that which makes the defendants' acts unlawful. *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). In an antitrust suit, proof of antitrust injury is required to establish standing. *Bell v. Dow Chem. Co.,* 847 F.2d 1179, 1182 (5th Cir.1988); *Feeney v. Chamberlain Mfg. Corp.,* 831 F.2d 93 (5th Cir. 1987); *Walker v. U–Haul Co.,* 747 F.2d 1011, 1014–15 (5th Cir.1984). Injury to the general public is insufficient; a private plaintiff must show personal injury. *See Krempp v. Dobbs,* 775 F.2d 1319, 1321 (5th Cir.1985).

Relying on *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), Baker Hughes asserts that as a competitor of Baker Hughes, Rockbit cannot demonstrate such injury as a matter of law. In the *Matsushita* case, two domestic consumer electronic products (CEP) manufacturers sued various Japanese CEP manufacturers to recover damages allegedly suffered as a result of defendants' claimed participation in a price-fixing conspiracy to charge high prices for CEPS in the United States market. The Supreme Court rejected this claim as a matter of law, holding that a company does not have standing to challenge a conspiracy among competitors to charge higher than competitive prices because the plaintiff is a beneficiary of such a conspiracy:

> [Plaintiffs cannot] recover damages for any conspiracy by petitioners to charge higher than competitive prices in the American market. Such conduct would indeed violate the Sherman Act (citations omitted), but it could not injure [plaintiffs]: as petitioners' competitors, [plain-

tiffs] stand to gain from any conspiracy to raise the market price in CEPs.

*Matsushita,* 475 U.S. at 582–83, 106 S.Ct. at 1353–54.

Baker Hughes maintains that for exactly the same reason, the alleged conspiracy between Baker Hughes and Reed to charge higher than competitive prices for bits would benefit, not injure, Rockbit. Rockbit could respond to the alleged conspiracy by raising its prices, thus reaping windfall profits, or by maintaining lower—but still profitable—prices and taking sales away from the claimed conspirators. Either way, Rockbit could have suffered no injury as a result of the alleged price-fixing conspiracy, and thus would lack standing to advance the Section 1 price-fixing claim.

Rockbit acknowledges the validity of the case law cited on standing, but takes issue with the conclusion that it has suffered no injury as a result of the alleged Section 1 violation. Rockbit advances the theory that if Baker Hughes engaged in a price-fixing conspiracy which did not in itself hurt Rockbit, but tried to drive Rockbit out of business as part of an overall scheme to protect the conspiracy, then Rockbit has standing. In support of this theory, Rockbit cites several cases which attack overall anticompetitive schemes. *See Coastal States Marketing, Inc. v. Hunt,* 694 F.2d 1358 (5th Cir.1983); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240 (9th Cir.1982), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983); *Kobe, Inc. v. Dempsey Pump Co.,* 198 F.2d 416 (10th Cir.), *cert. denied,* 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651 (1952).

However, assuming *arguendo,* that the alleged price-fixing conspiracy does exist, Rockbit's overall scheme theory does not provide support for the proposition that it has standing to advance the price-fixing claim. A private plaintiff may not recover damages under § 4 of the Clayton Act merely by showing 'injury causally linked to an illegal presence in the market.' *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 333, 110 S.Ct. 1884, 1889, 109 L.Ed.2d 333 (1990) (citing *Brunswick*

*Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977)). Rather, injury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anticompetitive aspect of the practice under scrutiny. *Id.* Under this principle, since Rockbit could not have suffered injury as a result of a price-fixing conspiracy, it cannot prevail even if it were a target of the conspiracy. *See Atlantic Richfield Co.,* 495 U.S. at 333, 110 S.Ct. at 1889 (plaintiff lacked standing even though defendant's price-fixing scheme was aimed at discounters such as plaintiff).

Rockbit's overall scheme cases do not support a different result. These cases hold only that conduct otherwise immune from the antitrust laws under the *Noerr–Pennington* doctrine [2] may be attacked if part of an overall scheme to violate the antitrust laws. But, Baker Hughes has not sought *Noerr–Pennington* immunity for its alleged price fixing. Moreover, the cases relied upon by Rockbit did not involve antitrust injury issues. Therefore, they fail to provide a basis for concluding that Rockbit has standing to advance its price-fixing claim. Accordingly, Rockbit lacks standing to sue Baker Hughes for a price-fixing claim in violation of Section 1.

C. *Section 1—Tying*

■ Rockbit alleges that Baker Hughes is requiring customers wishing to purchase Baker Hughes' horizontal drilling technology to use only Baker Hughes bits. In order to state a claim for unlawful tying, Rockbit must allege the four elements of such a violation: (i) the existence of two separate products—a tying product and a tied product; (ii) sufficient market power by the seller in the market for the tying product to enable it to appreciably restrain

trade in the market for the tied product; (iii) sale of the tying product conditioned by the seller on the buyer's purchase of the tied product; and (iv) the foreclosure of a not insubstantial amount of interstate commerce in the tied product by the tying arrangement. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984); *Klo–Zik Co., Texas Continental Express, Inc. v. General Motors Corp.,* 677 F.Supp. 499, 504–05 (E.D.Tex.1987) (*citing Fortner Enterp., Inc. v. United States Steel Corp.,* 394 U.S. 495 (1969)). While Rockbit has specified both a tying (horizontal drilling technology) and tied (Baker Hughes bits) product, it has failed to plead adequately any of the other essential elements of a tying claim.

The Supreme Court has stated that the essential element of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms. *Jefferson Parish,* 466 U.S. at 10, 104 S.Ct. at 1557. A defendant must be able, therefore, to convert its market power in the tying product market into power in the tied product market. Rockbit alleges only that Baker Hughes has sufficient power in the market for horizontal drilling technology to force the use of its bits on customers because it claims horizontal drilling technology is a research intensive, patent dominated, developing field, and Baker Hughes is allegedly one of the few companies which has patents in this technology. Rockbit essentially asks this Court to conclude that because Baker Hughes has horizontal drilling technology patents and makes horizontal drilling technology available to its customers, it must have market power.[3]

**2.** The *Noerr–Pennington* doctrine, derived from the decisions in *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), is to the effect that [j]oint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not

illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act. *Pennington,* 381 U.S. at 670, 85 S.Ct. at 1593.

**3.** Even if the horizontal drilling technology market is patent dominated as alleged by Rockbit, recent case law has rejected the presumption of market power from the possession of patents or

These allegations fail to satisfy the pleading standard of Rule 12. Rockbit has not identified the patents held by Baker Hughes, nor has it alleged the percentage of the horizontal drilling technology market possessed by Baker Hughes which purportedly gives Baker Hughes sufficient power to exert coercive pressure on its customers.[4] Mere conclusory language restating the requisite elements of a tying claim, without any factual specificity, is insufficient to make out the market power element of a tying claim. *See Mountain View Pharmacy v. Abbot Laboratories,* 630 F.2d 1383, 1387 n. 4 (10th Cir.1980).

Even if Rockbit had adequately pleaded that Baker Hughes has economic power sufficient to condition sales, in order to state a claim for unlawful tying it is not enough to show that the seller has sufficient economic power and that two products were purchased together ... *Klo–Zik Co.,* 677 F.Supp. at 505 (citation omitted). It must also be pleaded that the seller actually conditioned the sale of the tying product on the purchase of the tied product, thereby forcing buyers to purchase both products. *See Crossland v. Canteen Corp.,* 711 F.2d 714, 723 (5th Cir.1983); *Klo–Zik Co.,* 677 F.Supp. at 503. Rockbit has not identified any conditioned sales. There is no pleading that any buyer allegedly was compelled by Baker Hughes to purchase unwanted drill bits in order to obtain desired Baker Hughes horizontal drilling technology.

A tying arrangement will not be condemned unless a substantial volume of commerce is foreclosed thereby. *See Jefferson Parish,* 466 U.S. at 15, 104 S.Ct. at 1559. Rockbit has failed to allege any facts which would indicate the degree of commerce that may have been foreclosed by the alleged tying arrangement.

Finally, in addition to Rockbit's failure to plead any specific facts sufficient to indicate that a not insubstantial amount of interstate commerce has been foreclosed, Rockbit has not alleged any specific instances in which it was foreclosed from the market for drill bit sales due to Baker Hughes' alleged tying activities. Rockbit's conclusory allegation that it has been shut out of the market for bits as a result of Baker Hughes' alleged tying arrangements is not enough to satisfy the pleading requirements of a tying claim; the antitrust laws protect competition, not competitors. *See Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962); *Mosby v. American Medical Int'l, Inc.,* 656 F.Supp. 601, 608 (S.D.Tex. 1987).

This Court finds that Rockbit's failure to allege facts necessary to meet most of the requirements for stating a tying claim requires the dismissal of that claim.

### D. *Section 2—Monopolization*

To state a claim for monopolization, a plaintiff must allege: (i) a relevant product and geographic market; (ii) the possession of monopoly power in such market; and (iii) the willful acquisition or maintenance of that power. *United States v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *C.E. Serv., Inc. v. Control Data Corp.,* 759 F.2d 1241, 1244 (5th Cir.), *cert. denied,* 474 U.S. 1037, 106 S.Ct. 604, 88 L.Ed.2d 583 (1985). Rockbit must allege a specific product and geographic market in which the Court can determine whether Baker Hughes possesses monopoly power. Because the relevant market provides the framework against which economic power can be measured, defining the product and geographic markets in a threshold requirement under § 2. *Spectrofuge Corp. v. Beckman Instru-*

---

unique products. *See, e.g., A.I. Root Co. v. Computer/Dynamics, Inc.,* 806 F.2d 673 (6th Cir. 1986); *Brunswick Corp. v. Riegel Textile Corp.,* 752 F.2d 261 (7th Cir.1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615.

**4.** The allegations in Rockbit's second amended complaint that Baker Hughes' existing technology is technology competitive, and that Baker

Hughes has market power in this product market (Rockbit's Second Amended Complaint ¶ 34) are directly contrary to the earlier assertions in its first amended complaint that Baker Hughes has been slow to develop and integrate itself into the horizontal drilling market and into horizontal drilling technology in general. (First Amended Complaint ¶ 17)

*ments, Inc.,* 575 F.2d 256, 276 (5th Cir. 1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); *see also C.E. Serv., Inc.,* 759 F.2d at 1244. While Rockbit has provided the Court with a number of possibly relevant geographic and product markets from which to choose, Rockbit never specifies with sufficient clarity the relevant markets which Baker Hughes has allegedly monopolized.[5]

■ Even if Rockbit had alleged properly relevant product and geographic markets in which this Court could gauge Baker Hughes' economic power, Rockbit's monopolization claim still would be inadequate. It is the law in this circuit that a defendant must have a market share of at least fifty percent before he can be guilty of monopolization. *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 732 F.2d 480, 489 (5th Cir.1984) (footnote omitted). Rockbit has alleged only that Baker Hughes controls at least 35 percent, and perhaps as much as 45 percent of the market for tungsten carbide bits in the "Texlohoma" geographic market. As a matter of law, this allegation is insufficient to support a claim of monopolization in this circuit.[6]

■ The failure of Rockbit to allege the necessary market power makes the intent behind Baker Hughes' alleged conduct irrelevant. *Dimmitt Agri Indust., Inc. v. CPC Int'l Inc.,* 679 F.2d 516, 527–29 (5th Cir.1982), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983). Rockbit has, however, alleged a variety of acts by Baker Hughes which purportedly demonstrate Baker Hughes' willful acquisition or maintenance of monopoly power. As dis-

cussed above, the supposed price-fixing conspiracy with Reed cannot be alleged by Rockbit on standing grounds. The alleged tying arrangement has not been sufficiently pleaded, and thus may also not be used to fulfill the pleading requirements of Rockbit's monopolization claim. This leaves two other claimed exclusionary practices: predatory pricing and sham litigation.

■ Rockbit alleges that Baker Hughes is making inferior quality secondary bits in Argentina, importing them, and selling them in the Texlohoma market at below average variable cost in order to deprive Rockbit of potential business. Even if Rockbit's bare allegations of sales below average variable cost were more than conclusory, this predatory pricing claim must fail.

Rockbit tries to link the alleged predatory pricing of secondary bits with the claim of monopolization of premium bits on the theory that Baker Hughes' predatory pricing is intended to deprive Rockbit of the resources to compete in the premium bit market. This claim fails for a number of reasons. First, even if this alleged pricing tactic were aimed at Rockbit, there would be no claim because the antitrust laws are concerned with injury to competition, not competitors. *See Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977); *see also Pacific Eng. & Prod. Co. v. Kerr–McGee Corp.,* 551 F.2d 790, 795 (10th Cir.), *cert. denied,* 434 U.S. 879, 98 S.Ct. 234, 54 L.Ed.2d 160 (1977).

---

**5.** Count Two of Rockbit's second amended complaint alleges that Baker Hughes has a monopoly in the Texlohoma Market for tungsten carbide drill bits (Second Amended Complaint ¶ 46). However, scattered throughout the second amended complaint are numerous other possible product and geographic markets. The product markets could possibly include: oil field drilling equipment (Second Amended Complaint ¶ 8); drill bits for the oil field industry (Second Amended Complaint ¶ 9); premium [tungsten carbide] bits (Second Amended Complaint ¶¶ 11, 12, 15); and tungsten carbide drill bits and other oil field equipment. (Second Amended Complaint ¶ 17) The geographic markets could possibly include: the United States

and Alaska (Second Amended Complaint ¶ 8); the United States and world markets (Second Amended Complaint ¶ 10); and the global market, the oil patch, and Alaska and the Gulf Coast. (Second Amended Complaint ¶ 17)

**6.** Although Rockbit does allege in its second amended complaint that Baker Hughes controls from 55 percent to 60 percent of the premium bit market (Second Amended Complaint ¶ 14), Rockbit has failed to allege the geographic boundaries within which Baker Hughes purportedly has such a share.

1552

Second, and more significantly, in order to maintain a predatory pricing claim, Rockbit must plead that Baker Hughes will eventually be able to recoup the losses it will suffer while selling below cost. *Stitt Spark Plug Co. v. Champion Spark Plug Co.*, 840 F.2d 1253, 1255–57 (5th Cir.), *cert. denied*, 488 U.S. 890, 109 S.Ct. 224, 102 L.Ed.2d 214 (1988). Rockbit does not allege that Baker Hughes, if successful in its attempt to drive Rockbit from the market, could maintain monopoly pricing in the secondary bit market long enough to recoup its losses in this market. Rather, Rockbit proffers the theory that Baker Hughes will recoup its losses on sales of secondary bits through its price fixing of premium bits. However, even if Baker Hughes could earn supercompetitive profits in the premium bit market, it would make no economic sense for it to forego these profits to subsidize losses in the secondary bit market. This type of cross-subsidization theory was specifically rejected in *Matsushita*, in which defendants allegedly fixed prices at high levels in Japan in order to subsidize predatory prices in the United States. According to the Supreme Court "[w]hether or not [defendants] have the means to sustain substantial losses in this country over a long period of time, they have no motive to sustain such losses absent some strong likelihood that the alleged conspiracy in this country will eventually pay off." *Matsushita Elec. Indust. Co.*, 475 U.S. at 593, 106 S.Ct. at 1359. Rockbit's predatory pricing theory is similarly deficient.

 The remaining exclusionary conduct alleged by Rockbit is sham litigation. Rockbit alleges that Baker Hughes has instituted a state court action to enforce a patent license agreement, even though it knows that the underlying patent is baseless, for the sole purpose of driving Rockbit out of business. However, instituting a court action is immune from application of the antitrust laws under the *Noerr–Pennington* doctrine on the principle that genuine efforts to influence governmental decision making are not penalized by application of the antitrust laws. *In re Burlington N., Inc.*, 822 F.2d 518, 524 (5th Cir.1987), *cert. denied*, 484 U.S.

1007, 108 S.Ct. 701, 98 L.Ed.2d 652. *See Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). *Noerr–Pennington* immunity is not lost on a sham litigation theory even though the [defendants'] avowed purpose is to eliminate a competitor. *In re Burlington N., Inc.*, 822 F.2d at 524.

Rockbit's sham litigation claim is further undercut by the fact that after a jury trial and verdict for Hughes Tool Company, the state court entered judgment for Hughes Tool Company. Based on that judicial proceeding, Rockbit did not oppose an entry of partial summary judgment for Baker Hughes in this case, and on December 6, 1990, this Court entered a summary judgment for Baker Hughes as to Count Four of the second amended complaint (Document # 52).

The success of the claim presented is persuasive evidence that the litigant in fact wanted the relief ... Thus, an antitrust plaintiff attempting to base liability on successful petitioning must overcome a strong inference that *Noerr–Pennington* applies and in many cases may be unable to do so. *In re Burlington N., Inc.*, 822 F.2d at 528. Rockbit's bare pleading of sham cannot overcome the inference that Baker Hughes' state court action qualifies for *Noerr–Pennington* immunity. In light of the fundamental first amendment values that the *Noerr–Pennington* doctrine is designed to protect, a complaint should contain specific allegations demonstrating that the *Noerr–Pennington* protections do not apply. *Boone v. Redevelopment Agency of San Jose*, 841 F.2d 886, 894 (9th Cir.1988). Conclusory allegations are insufficient to result in denial of *Noerr–Pennington* protection. *Id.*

Rockbit's failure to allege the requisite elements of a monopolization claim mandates the dismissal of this portion of the second amended complaint.

E. *Section 2—Attempted Monopolization*

It is well established in this circuit that to state a claim for attempted monopoliza-

tion, a plaintiff must allege: (i) a relevant product and geographic market; (ii) a specific intent to monopolize that market; (iii) exclusionary or predatory conduct in furtherance of the attempted monopolization; and (iv) a dangerous probability that, absent judicial intervention, the attempt will be successful. *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 732 F.2d 480, 490 (5th Cir.1984); *Adjusters Replace-A-Car, Inc. v. Agency Rent-A-Car, Inc.,* 735 F.2d 884, 887 (5th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 910, 83 L.Ed.2d 924 (1985). As discussed earlier in regard to the monopolization claim, Rockbit has failed to allege a specific product and geographic market as to which the Court can determine whether monopolization by Baker Hughes is a dangerous probability.

The exclusionary or predatory conduct which must be pleaded in order to make out an attempted monopolization claim also has already been discussed in the context of Rockbit's monopolization claim. The allegations of price fixing, predatory pricing, and sham litigation are as inadequate to support the claim of attempted monopolization as they are to support the claim of monopolization.

 Finally, Rockbit's bare allegation that there is a dangerous probability that Baker Hughes will be successful in its attempt to monopolize is insufficient to support its claim. A defendant must have some legally significant share of the market before he approaches the level of dangerous probability of success condemned by the attempt provision of section two. *Domed Stadium Hotel,* 732 F.2d at 490. Rockbit's conclusory statement is insufficient without any allegation of supporting facts. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Larry R. George Sales Co. v. Cool Attic Corp.,* 587 F.2d 266, 273 (5th Cir.1979).[7]

Because Rockbit has failed to adequately plead with supporting factual allegations the requisite elements of an attempted monopolization violation, the attempted monopolization claim must also be dismissed.

### F. *Section 2—Joint Monopolization*

Rockbit's last of its arsenal of antitrust claims is that Baker Hughes and Reed have jointly monopolized the Texlohoma market for tungsten carbide bits through an agreement to fix prices and freeze out competition. However, the only conduct alleged to support this joint monopolization claim is the companies' purported participation in a price-fixing conspiracy. As discussed above, Rockbit has not suffered any antitrust injury as a result of this alleged price-fixing conspiracy and thus lacks standing to maintain the joint monopolization claim. Rockbit's reliance on *United States v. American Airlines, Inc.,* 743 F.2d 1114 (5th Cir.1984), is unavailing. The plaintiff in that case, the United States, was not seeking treble damages under Section 4 of the Clayton Act, and therefore faced no antitrust injury requirement. Accordingly, the joint monopolization claim must also be dismissed.

### G. *Request for relief*

In addition to its request for damages, Rockbit has asked this Court for injunctive relief under Section 16 of the Clayton Act and for a declaratory judgment of noninfringement on Baker Hughes' patent claims. The request for an injunction is predicated on the success of Rockbit's substantive claims under Section 1 and Section 2 of the Sherman Act. Because the Court is dismissing all claims under Section 1 and Section 2, this request for injunctive relief is denied. Furthermore, because summary judgment has already been granted in favor of Baker Hughes as to Count Four based on the trial and judgment of the

---

**7.** As with the monopolization claim, where Rockbit alleges that Baker Hughes controls 55 percent to 60 percent of the premium bit market, there is no geographic market alleged. To the extent that Rockbit has alleged product mar-

ket share and geographic market information, markets are involved in which Rockbit does not claim Baker Hughes is attempting to monopolize.

state court case, Rockbit's request for declaratory judgment is denied.

Rockbit already has amended its original complaint twice. Rockbit's second amended complaint was filed after Rockbit had an opportunity to review Baker Hughes' motion to dismiss and to conform the second amended complaint to satisfy the pleading requirements discussed by Baker Hughes in its motion to dismiss. Based upon the foregoing, it is

ORDERED that Baker Hughes motion to dismiss (Document # 7) is GRANTED.